In re CONTINENTAL FINANCIAL
RESOURCES, INC., Debtor.

FEDERAL DEPOSIT INSURANCE COR-
PORATION, as Liquidating Agent for
Southstate Bank for Savings, Appel-
lant,

v.

CONTINENTAL FINANCIAL
RESOURCES, INC.,
Appellee.

Civ. A. No. 93–10318–H.

United States District Court,
D. Massachusetts.

May 24, 1993.

Michael B. Feinman, Andover, MA, for debtor/appellee.

Marshall D. Stein, Cherwin & Glickman, Boston, MA, Nicholas Katsonis, F.D.I.C., Westborough, MA, for appellant.

## MEMORANDUM AND ORDER

HARRINGTON, District Judge.

Appellant Federal Deposit Insurance Corporation ("FDIC"), as Liquidating Agent for Southstate Bank For Savings ("Southstate"), appeals a decision of the United States Bankruptcy Court, 149 B.R. 260, denying its Motion to Dismiss the Complaint of Appellee Continental Financial Resources, Inc. ("Debtor") for lack of subject matter jurisdiction.

The facts of the case are undisputed. On September 25, 1987, the Debtor executed two promissory notes to Southstate in the amounts of $109,449.29 and $474,376.93. That same day, the Debtor signed two security agreements in which it granted Southstate "a continuing security interest" in, *inter alia,* leases to secure payment of "all loans, advances, and extensions of credit from Southstate to the Debtor, including all obligations now or hereafter existing." On April 10, 1991, the Debtor also executed an "Agreement for Cross–Collateralization of Obligations with Southstate." On March 6, 1992, within a year of signing the Agreement for Cross–Collateralization, the Debtor filed its voluntary Chapter 11 petition in Bankruptcy Court.

On April 24, 1992, the Commissioner of Banking for the Commonwealth of Massachusetts declared Southstate insolvent and appointed the FDIC to be Liquidating Agent/Receiver of the failed institution. On three separate days,[1] a Notice to Creditors was published in the Boston Globe, the Boston Herald, and the Enterprise, informing creditors of Southstate that they had until July 28, 1992 to file claims with the FDIC administrative claims process as required by the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, as amended and codified at 12 U.S.C. § 1821 *et seq.* ("FIRREA"). The FDIC also sent the Debtor a letter notifying it that it was to file any claims it had against Southstate with the FDIC by July 28, 1992 or such claims would be barred under 12 U.S.C. § 1821(d)(5). A Proof of Claim form was enclosed with the letter. Although the Debtor was given this notice, it did not file any claims with the FDIC.

On June 29, 1992, the Debtor filed its Amended Verified Complaint in Bankruptcy Court, seeking to have the two security agreements executed on September 25, 1987 declared invalid as contrary to an alleged unwritten understanding between the parties. In addition, the Debtor requested a determination that the cross-collateralization agreement be avoided as a preferential transfer under 11 U.S.C. § 547(b). On November 2, 1992, the FDIC filed its Proof of Claim in the Chapter 11 proceeding.

In its Motion to Dismiss the Debtor's Complaint, the FDIC argued that the Bankruptcy Court lacked jurisdiction over the claims in the Complaint because the Debtor had failed to first submit these claims to the FDIC administrative claims process. The Bankruptcy Court denied this Motion on the ground that the FDIC had consented to the Bankruptcy Court's equitable jurisdiction by filing its proof of claim there. The FDIC then appealed the decision to this Court.

■ The scope of the Bankruptcy Court's jurisdiction is set forth in 28 U.S.C. § 157(b)(1), which provides:

Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or

---

1. April 29, 1992, May 29, 1992, and June 28, 1992.

arising in a case under title 11 ... and may enter appropriate orders and judgments, subject to review under section 158 of this title.

The statute contains a non-exhaustive list of core proceedings that includes "allowance or disallowance of claims against the estate," 28 U.S.C. § 157(b)(2)(B), and "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C). The United States Supreme Court has recognized that "by filing a claim against a bankruptcy estate, the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power." *Langenkamp v. Culp,* 498 U.S. 42, 44, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990), (quoting *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 57–60 & n. 14, 109 S.Ct. 2782, 2798–2800, & n. 14, 106 L.Ed.2d 26 (1988)), *reh'g denied,* 498 U.S. 1043, 111 S.Ct. 721, 112 L.Ed.2d 709 (1991). If the creditor is met with a preference action, the Court has indicated, that action becomes part of the claims-allowance process over which the Bankruptcy Court has equitable jurisdiction. *Id.* "In other words, the creditor's claim and the ensuing preference action become integral to the restructuring of the debtor-creditor relationship through the bankruptcy court's equity jurisdiction." *Id.* (Emphasis omitted). In general, therefore, a creditor who invokes the jurisdiction of the Bankruptcy Court to establish his right to participate in the distribution of the estate cannot object to the Court's necessary determination of preference issues related to that claim. *See In re Coated Sales, Inc.,* 119 B.R. 452, 455 (Bankr.S.D.N.Y.1990). On the basis of this reasoning, the Bankruptcy Court found that, by filing its proof of claim, the FDIC had consented to the Bankruptcy Court's equitable jurisdiction.

 The FDIC, however, contends that the above reasoning applies only to personal jurisdiction and that the Bankruptcy Court erroneously found a waiver of subject matter jurisdiction. A close reading of the cases relied upon by the Bankruptcy Court, particularly *Langenkamp* and *Granfinanciera,* bears out the FDIC's

position insofar as the Bankruptcy Court's subject matter jurisdiction was not at issue in these cases. *See Langenkamp,* 498 U.S. at 44–45, 111 S.Ct. at 331–32; *Granfinanciera,* 492 U.S. at 57–59 & n. 14, 109 S.Ct. at 2798–2799 & n. 14. These cases consequently do not disturb the well established principle that although a party may waive objections to personal jurisdiction by its conduct, it may not so waive a court's lack of subject matter jurisdiction. *See American Fire & Cas. Co. v. Finn,* 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951); *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 167–68, 60 S.Ct. 153, 154–55, 84 L.Ed. 167 (1939); *Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1229 (9th Cir.1989); *Laffey v. Northwest Airlines, Inc.,* 567 F.2d 429, 474 (D.C.Cir.1976), *cert. denied,* 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1978).

In deciding this appeal, we must therefore address the FDIC's argument that 12 U.S.C. § 1821(d)(13)(D)(i) divests the Bankruptcy Court of subject matter jurisdiction over the Debtor's Complaint. Section 1821(d)(13)(D)(i) provides:

**(D) Limitation on judicial review**

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the corporation may acquire from itself as such receiver....

The statute has been interpreted to require that persons with claims against the FDIC first exhaust their remedies through the administrative claims process set forth in FIRREA before bringing them in court. *See Meliezier v. RTC,* 952 F.2d 879, 882 (5th Cir.1992); *Rosa v. RTC,* 938 F.2d 383, 391–92 (3d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). The Debtor's Complaint seeks to determine the validity of the FDIC's claims against the bankruptcy estate. Because the Debtor did not first press its challenges through

the administrative claims process, the FDIC argues that the Bankruptcy Court now lacks subject matter jurisdiction to entertain that Complaint.

 An examination of the FIRREA administrative claims process suggests, however, that even in the face of the provision cited by the FDIC, FIRREA applies only to claims against the FDIC, and not to the FDIC's claims against its debtors. *See In re Purcell*, 150 B.R. 111, 116 (D.Vt. 1993); *In re All Season's Kitchen, Inc.*, 145 B.R. 391, 397 (Bankr.D.Vt.1992); *In re Gemini Bay Corp.*, 145 B.R. 350, 352 (Bankr.M.D.Fla.1992); *but see In re Yiakas*, Adv.Pro. No. A91-1491, slip op. at 2-4 (Bankr.D.Mass. July 7, 1992). This examination reflects the fact that 12 U.S.C. § 1821(d)(13)(D)(i) "do[es] not exist in isolation, but [is] embedded within a complex statutory framework." *See Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 573, 109 S.Ct. 1361, 1368, 103 L.Ed.2d 602 (1988); *see also Stafford v. Briggs*, 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980) ("[I]t is well settled that, in interpreting a statute, the court will not look merely to a particular clause in which general words may be used, but will take in connection with it the whole statute.") (quoting *Brown v. Duchesne*, 19 How. 183, 194, 15 L.Ed. 595 (1857)). The language of FIRREA repeatedly refers to the FDIC's creditors and yet omits any reference to its debtors, indicating that FIRREA was intended to apply only to *creditors'* claims. *See, e.g.*, 12 U.S.C. § 1821(d)(3)(B)-(C) [2]; 12 U.S.C. § 1821(d)(10)(A) [3]; *see also Purcell*

150 B.R. at 113-114 (examining statutory language); *All Season's Kitchen*, 145 B.R. at 395 n. 3 (same). For example, consistent with its provision mandating the disallowance of untimely claims, FIRREA requires that creditors be notified to present their claims through the claims process; yet, FIRREA fails to require the same notice to debtors that might challenge the FDIC's claims against them. *See* 12 U.S.C. § 1821(d)(3)(B)-(C); 12 U.S.C. § 1821(d)(5)(C)(i). The fact that FIRREA does not even afford debtors adequate opportunity to avail themselves of the claims process reinforces the notion that the statute was never meant to apply to them. *Cf. Coit*, 489 U.S. at 587, 109 S.Ct. at 1375-76 ("Administrative remedies that are inadequate need not be exhausted."). Under this reading of the statutory language, a complaint to determine the validity of a lien claimed by the FDIC on a debtor's assets is consequently not a "claim" within FIRREA's purview. Although the Debtors' challenge constitutes an "action seeking a determination of rights with respect to [Southstate's] assets," this clause, when read in the larger context of FIRREA, does not apply to divest the Bankruptcy Court of subject matter jurisdiction over the Debtor's Complaint.

Similarly, while FIRREA's legislative history of FIRREA refers to creditors, it never mentions the FDIC's debtors, thereby reaffirming our belief that Congress had never intended that the statute apply to the FDIC's debtors. *See Purcell*, 150

**2.** 12 U.S.C. § 1821(d)(3)(B) provides:

**Notice requirements**
The receiver, in any case involving liquidation or winding up of the affairs of a closed depository institution, shall—
(i) promptly publish a notice to the depository institution's *creditors* to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice....
(Emphasis added). 12 U.S.C. § 1821(d)(3)(C) states:
**Mailing required**
The receiver shall mail a notice ... to any *creditor* shown on the institution's books—
(i) at the *creditor's* last address appearing in such books; or

(ii) upon discovery of the name and address of a claimant not appearing on the institution's books within 30 days after the discovery of such name and address.
(Emphasis added).

**3.** 12 U.S.C. § 1821(d)(10)(A) provides, in pertinent part:
**(10) Payment of claims**
**(A) In general**
The receiver may, in the receiver's discretion and to the extent funds are available, pay *creditor* claims which are allowed by the receiver, approved by the Corporation pursuant to a final determination ..., or determined by the final judgment of any court of competent jurisdiction....
(Emphasis added).

B.R. at 115 (examining legislative history); *All Season's Kitchen*, 145 B.R. at 397 (same). As a House Report states, "[t]he bill establishes a claims procedure, with specific deadlines for *creditors* and for the FDIC, to be followed in cases where the FDIC has been appointed receiver." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 331, *reprinted in* [1989] 2 U.S.C.C.A.N. 86, 127 (emphasis added). The expressed purpose of enacting FIRREA was "to dispose of the bulk of *claims against* failed financial institutions expeditiously and fairly." H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 419, *reprinted in* [1989] 2 U.S.C.C.A.N. 86, 215 (emphasis added). Moreover, Congress intended, through FIRREA, to provide "a clear set of guidelines for claimants and for the FDIC" in response to "the constitutional and statutory concerns ... outlined by the Supreme Court in *Coit* [.]" H.R.Rep. No. 101–54(I), 101st Cong., 1st Sess. 418–19, *reprinted in* [1989] 2 U.S.C.C.A.N. 86, 214–15. Although Congress provided clear guidelines for the FDIC's creditors, it conspicuously failed to do so for those debtors seeking to challenge claims by the FDIC. *See All Season's Kitchen*, 145 B.R. at 400. As the court in *All Season's Kitchen* noted, there is therefore "not a scintilla of a suggestion that Congress intended that debtors who owe money to FDIC should have to go through the FIRREA claims determination process, nor of any intent to deprive the Bankruptcy Court of jurisdiction to determine issues from FDIC's claims against those debtors." *Id.* at 397.

In sum, we find that, in light of its statutory language and legislative history, FIRREA applies only to claims against the FDIC and not to challenges incident to the FDIC's claims against its debtors. FIRREA therefore does not divest the Bankruptcy Court of subject matter jurisdiction over the Debtor's Complaint, and accordingly, we affirm the Bankruptcy Court's exercise of jurisdiction.