**RESOLUTION TRUST CORPORATION as Receiver for First Federal Savings Bank of Diamondville, Wyoming, Plaintiff/Appellee,**

v.

**William Kimbrough LOVE, Defendant/Appellant.**

No. 93–8051.

United States Court of Appeals, Tenth Circuit.

Sept. 26, 1994.

---

Donna S. Sears, Casper, WY (Thomas M. Hogan and Camille A. Shillenn, with her on the brief), for plaintiff/appellee.

James P. Castberg, Sheridan, WY, for defendant/appellant.

Before MOORE and McWILLIAMS, Circuit Judges, and ROSZKOWSKI,* Senior District Judge.

ROSZKOWSKI, Senior District Judge.

This is an appeal from a Summary Judgment granted in favor of Plaintiff–Appellee, Resolution Trust Corporation (RTC), in a suit for deficiency judgment against Defendant–Appellant, William Kimbrough Love. On appeal, Love raises two arguments: 1) the RTC is not entitled to recover on the note because it cannot produce the original;

---

* The Honorable Stanley J. Roszkowski, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

and 2) affirmative defenses do not require administrative exhaustion under FIRREA. For the reasons that follow, we hold that production of the original note is not essential and affirmative defenses do not require administrative exhaustion under FIRREA.

On February 5, 1985, Defendant Love executed and delivered to First Guaranty Savings and Loan Association an Installment Note and Security Agreement for $200,000.00. The note was due and payable on or before February 1, 1988. To secure payment of the note, Love mortgaged to First Guaranty Savings and Loan Association of Gillette, Wyoming, two parcels of land in Sheridan County, Wyoming. The mortgage was recorded on February 14, 1985.

On November 29, 1989, the Office of Thrift Supervision (OTS) declared First Guaranty Savings and Loan Association (now known as First Savings Bank, FSB of Diamondville, Wyoming) insolvent and appointed RTC as Receiver. On the same day, First Federal Savings Bank of Diamondville, Wyoming, (a "bridge bank" created by RTC) purchased Love's note and mortgage from RTC as Receiver for First Savings Bank, FSB of Diamondville, Wyoming. Then, OTS declared First Federal Savings Bank of Diamondville, Wyoming, insolvent and appointed RTC as Conservator. On June 14, 1990, OTS appointed RTC as Receiver for First Federal Savings Bank of Diamondville, Wyoming.

Thereafter, the note was accelerated due to default. The mortgage was foreclosed, and on July 26, 1990, the property was sold. The parcels were offered for sale as a unit, and sold for $132,489.24 to the RTC as Receiver for First Federal Savings Bank of Diamondville, Wyoming.

The proceeds of sale left a deficiency of $69,855.71, plus interest due on the note, and the RTC filed suit in the district court to recover that deficiency. Love raised several affirmative defenses to that action which the district court refused to consider, holding that it lacked jurisdiction because the defenses were not first presented to the RTC.

The original note was lost by the RTC. However, a copy of the note was produced, and Love acknowledged the execution and delivery of the original. The RTC has agreed to indemnify Love against future liability on the note.

### I. The Lost Promissory Note

Plaintiff RTC cannot produce the original promissory note. Defendant Love contends that since RTC cannot produce the original note to be merged into judgment, it is not entitled to recover on that note. In support of his position, Love cites several cases, but ignores Wyoming Statutes Annotated § 34.1–3–309. That section of the code, an adoption of the U.C.C. position, clearly provides for recovery on a note that has been lost. Section 34.1–3–309 states in part:

A person not in possession of an instrument is entitled to enforce the instrument if (1) the person was in possession of the instrument and entitled to enforce it when loss of possession occurred, (2) the loss of possession was not the result of a transfer by the person or a lawful seizure, and (3) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

W.S.A. § 34.1–3–309(a).

Plaintiff has proven satisfaction of these three requirements by the Affidavit of Ross Kroeber in Support of Plaintiff's Motion for Summary Judgment and Plaintiff's Affidavit of Lost Promissory Note. Defendant offered no contrary evidence.

The statute further states that: "A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If the proof is made, section 34.1–3–308 applies to the case as if the person seeking enforcement had produced the instrument." W.S.A. § 34.1–3–309(b).

Plaintiff RTC has proven the terms of the instrument by producing a copy of the note, and Defendant Love acknowledges the execution and delivery of the note. RTC has proven its right to enforce the note through

the Affidavit of Ross Kroeber in Support of Plaintiff's Motion for Summary Judgment. Therefore, RTC has satisfied these conditions of the statute.

Finally, the statute requires that the person seeking enforcement of the note adequately protect the payor against loss from a claim by a third party to enforce the instrument. *Id.* Protection may be by any adequate means. *Id.*

Here, the RTC has agreed to indemnify Love against further liability on the note from a claim by any person who may become a holder of the note. The note was never endorsed, sold, assigned, transferred, or otherwise negotiated, and is not likely to have been stolen, so a third party is unlikely to come into possession of the note. Thus, indemnification is more than adequate to protect Defendant Love.

The RTC has satisfied the requirements of § 34.1–3–309 and, therefore, is entitled to enforce the note even though it cannot produce the original.

## II. The District Court's Jurisdiction Over Affirmative Defenses

In the district court, Defendant Love raised several affirmative defenses which sought to defeat the claim against him for a deficiency judgment. He contended that the RTC failed to comply with the statutory requirements for foreclosure of mortgages as mandated by W.S.A. §§ 34–4–101 et seq.

(1977 as amended). Specifically, he contended that the RTC failed to offer the mortgaged tracts of land for sale separately and failed to record all assignments of the mortgage. He also asserted collateral estoppel and laches. The District Court held that since Love did not first present the defenses to the RTC pursuant to 12 U.S.C. § 1821(d), it lacked jurisdiction to consider those defenses.

Congress enacted the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA" or "the act"), 12 U.S.C. § 1821, in response to the precarious financial condition of the nation's banks and savings and loan institutions. *Henderson v. Bank of New England,* 986 F.2d 319, 320 (9th Cir.1993) (citing H.R.Rep. No. 101–54(I), 101st Cong., reprinted in 1989 U.S.C.C.A.N. 86, 215). The act gives broad powers to the Resolution Trust Corporation to deal expeditiously with failed financial institutions, and establishes administrative procedures for adjudicating claims asserted against them. *Id.*

The act requires that the RTC give notice to creditors of the financial institution upon appointment of the receivership. 12 U.S.C. § 1821(d)(3)(B).[1] Creditors then have a limited amount of time to file a claim with the RTC. *Id.* The agency has 180 days to rule on the claim. 12 U.S.C. § 1821(d)(5)(A)(i).[2] If the claim is disallowed or not ruled upon within 180 days, then the claimant can seek judicial review of that claim. 12 U.S.C. § 1821(d)(6)(A).[3]

---

1. 12 U.S.C. § 1821(d)(3)(B) provides in part:
   Notice requirements. The Receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall—
   (i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall not be less than 90 days after the publication of such notice ...

2. 12 U.S.C. § 1821(d)(5)(A)(i) provides:
   Determination period in general. Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

3. 12 U.S.C.A. § 1821(d)(6)(A) provides:
   Provision for agency review or judicial determination of claims in general. Before the end of the 60 day period beginning on the earlier of—
   (i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the Corporation is receiver; or
   (ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i), the claimant may ... file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depositor institution's principle place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

Pursuant to § 1821(d)(13)(D) of the act, a court does not have jurisdiction over a claim unless it has first been presented to the agency. See, e.g., *Henderson v. Bank of New England,* 986 F.2d at 321; *Office & Professional Employees International Union, Local 2 v. FDIC,* 962 F.2d 63, 66 (D.C.Cir.1992); *Meliezer v. RTC,* 952 F.2d 879, 882 (5th Cir.1992); *Rpsa v. RTC,* 938 F.2d 383, 391 (3rd Cir.1991). That subsection states:

> Limitation on judicial review. Except as otherwise provided in this subsection, no court shall have jurisdiction over—
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C.A. § 1821(d)(13)(D). At issue in this case is the interpretation of the words "claim" and "action" as used in this subsection, and whether these terms encompass affirmative defenses.

Plaintiff RTC contends that these terms include affirmative defenses, and thus, § 1821(d)(13)(D) precluded district court jurisdiction over Love's non-exhausted affirmative defenses. In support of its position, Plaintiff relies upon *RTC v. Mustang Partners,* 946 F.2d 103 (10th Cir.1991), but such reliance is misplaced. That case holds that a defendant must present his *counterclaims* to the RTC even when the suit is pending at the time of appointment of the receivership. *Id.* at 106. However, the court expressly declined to determine whether *affirmative defenses* were also covered by the exhaustion requirements of the act because the question was moot in that case. *Id.* at 105. Therefore, this issue has not yet been decided by this Court.

■ To interpret the statute, the Court must look to the language of the statute itself. *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990). A stat-ute must be construed as "mandated by the grammatical structure." *United States v. Ron Pair Enterprises,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). If the language is clear and unambiguous, then the plain meaning of the words must be given effect. *Id.*

The Court in *RTC v. Conner,* 817 F.Supp. 98 (W.D.Okla.1993), provides a particularly persuasive discussion regarding the plain meaning of the terms "claim" and "action" in the act:

> The statute is clear and unambiguous. Therefore, it must be interpreted according to its plain meaning. The word "claim," used as a noun as it is in the relevant statute, ordinarily means a "cause of action." See Black's Law Dictionary (5th Ed.1979) at p. 224. The word "action" "in its usual legal sense means a suit brought in a court" or "a formal complaint within the jurisdiction of a court of law." Id. at p. 26. . . . Affirmative defenses do not seek payment nor are they "claims" or "actions," i.e. causes of action. Nor is an affirmative defense an "action seeking a determination of rights." 12 U.S.C. § 1821(d)(13)(D)(i). An affirmative defense may be asserted in an action and an affirmative defense may seek or require a determination of rights but it is not an "action seeking a determination of rights."

*Id.* at 100.

■ In interpreting the language of the statute, we must also look to the provisions of the entire act. *Aulston v. United States,* 915 F.2d 584, 589 (10th Cir.1990), cert. denied, 500 U.S. 916, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991). "It is a general rule of construction that the statute should be read as a whole." *FDIC v. Canfield,* 967 F.2d 443, 446 (10th Cir.1992) (en banc) (citations omitted). Such a reading of FIRREA indicates that Congress did not intend for the terms "claim" and "action" to encompass affirmative defenses.

First, the notice and filing procedures outlined in § 1821(d)(3)(B) are inconsistent with an exhaustion requirement for affirmative defenses. This section requires the RTC, upon appointment of the receivership, to give

notice to creditors to submit their claims within a specified period of time. 12 U.S.C. § 1821(d)(3)(B). Administrative exhaustion would require parties, who are not creditors and thus do not receive notice, to present all potential affirmative defenses that they may have to actions by the RTC, even though such actions may be unknown and unasserted. Such a requirement would be unreasonable and not likely to have been intended by Congress.

In addition, this section requires that notice be given only to *creditors* of the financial institution, and that *creditors* file their claims with the RTC. *Id.* This language seems to negate the possibility that Congress intended to include as claims the affirmative defenses asserted by a defendant in response to a suit filed by the RTC. Party defendants in such cases would likely be in Love's position, i.e., debtors and not creditors of the RTC.

Second, the requirements of § 1821-(d)(6)(A) are also inconsistent with exhaustion of affirmative defenses. That section requires a claimant to file suit on a claim within 60 days of its disallowance by the agency. 12 U.S.C.A. § 1821(d)(6)(A). If not filed in court within that time, the claim is barred. *Id.* If it is merely a defensive response and not the basis for independent relief, an affirmative defense cannot be asserted until the RTC's claim has been filed in the district court. If the RTC has not filed its claim before the expiration of the 60 days, then the defendant would be barred from asserting the affirmative defense before the affirmative defense could be asserted. Surely, Congress would not have intended such a result. Thus, both subsections 1821(d)(3)(B) and (6)(A) demonstrate that the terms "claim" and "action" do not include affirmative defenses.

Based largely on § 1821(d)(3)(B), the Ninth Circuit has held that the district court has subject matter jurisdiction over affirmative defenses even without administrative exhaustion. *RTC v. Midwest Federal Savings Bank of Minot,* 4 F.3d 1490 (9th Cir.1993). That Court ruled that if the defendant, prior to being sued by the RTC, was not a creditor of the RTC and had no independent basis for bringing an action against the RTC, then his affirmative defenses can be raised even though he has not exhausted the administrative procedures established by FIRREA. *Id.* at 1497. Examining § 1821(d)(3)(B), the court reasoned that any other interpretation of the act would result in the "patently absurd consequence" of requiring the presentment to the RTC of all potential affirmative defenses that might be asserted against unknown and unasserted actions by the RTC. *Id.* (citing *RTC v. Conner,* 817 F.Supp. at 102). We agree with this reasoning.

The Court in *RTC v. Schonacher,* 844 F.Supp. 689 (D.Kan.1994), also took this position. Relying largely on *Conner* and *Midwest Federal Savings,* the Court held that defenses are not subject to the administrative claims procedure unless they could have been asserted independently against the RTC or the financial institution. *Id.* at 694. "If a defendant, prior to being sued by RTC, would have had no independent grounds for filing a claim based on his asserted defense against the RTC or the institution, then Section 1821(d)(13)(D) does not divest the district court of jurisdiction even though the defendant has not exhausted the FIRREA administrative claims procedure." *Id.*

Similarly, the Third Circuit held that § 1821(d)(13)(D) did not bar a plaintiff from asserting an affirmative defense to an RTC counterclaim. *National Union Fire Insurance Company v. City Savings, FSB,* 28 F.3d 376 (3rd Cir.1994). The Court found that affirmative defenses are not "claims" or "actions", but rather are responses to claims or actions and, therefore, are not subject to the restrictions of § 1821(d)(13)(D). *Id.* at 385. In addition, the Court concluded that § 1821(d)(3)(B) compelled this decision because parties would otherwise be forced to submit hypothetical affirmative defenses to suits that had not yet been brought against them. *Id.* at 386.

Significantly, the statute never uses the term "defense", "affirmative defense" or "potential affirmative defense". As the Court in *Conner* pointed out, if Congress had intended "to remove from the jurisdiction of the courts any and all actions, claims or defenses which might diminish the assets of any depository institution ... or [which might] diminish or

defeat any claims of the Corporation in any capacity, it would [have] been simple to so provide." *RTC v. Conner*, 817 F.Supp. at 100. But Congress did not so provide. Instead, the act gives the RTC authority over "any claim by a creditor or claim of security, preference or priority." 12 § U.S.C. 1821(d)(5)(D)[4]; see, also, 12 U.S.C. § 1821(d)(3)(B) and (C). Clearly, an affirmative defense asserted by a defendant in an action brought by the RTC is none of these.

Thus, the plain meaning of the words and the omission of any reference to the term "defense" support the conclusion that the terms "claim" and "action" as used in § 1821(d)(13)(D) do not encompass affirmative defenses. Additionally, as illustrated, reference to the statute as a whole compels this conclusion.

Accordingly, we hold that the district court has jurisdiction over affirmative defenses even though they have not been first presented to the agency for determination. Therefore, the judgment of the district court is affirmed as to the lost promissory note and reversed as to the jurisdiction of the district court to hear Love's affirmative defenses. The cause is remanded for a hearing on the merits of Defendant's affirmative defenses.

---

4. 12 U.S.C. 1821(d)(5)(D) reads in its entirety: Authority to disallow claims. The receiver may disallow any portion of any claim by a creditor or claim of security, preference, or priority which is not proved to the satisfaction of the receiver.