NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.,
Plaintiff,

v.

MIDLAND BANCOR, INC.,
et al., Defendants.

Civ. A. No. 93–2467–GTV.

United States District Court,
D. Kansas.

Nov. 14, 1994.

Benjamin F. Mann, Terrance M. Summers, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, Mary Jo Barry, D'Amato & Lynch, New York City, for plaintiff.

Richard D. Ralls, John W. McClelland, Christine L. Schlomann, King, Burke, Hershey, Farchmin & Schlomann, Kansas City, MO, for Midland Bancor, Inc., Midland Bank.

John S. Torkelson, Resolution Trust Corp., Overland Park, KS, Richard T. Donovan, Patricia J. Heritage, Rose Law Firm, Little Rock, AR, Anthony M. Whalen, Kimberly K. Noble, Fields & Brown, Kansas City, MO, for Resolution Trust Corp.

Charles A. Getto, Douglas M. Greenwald, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS, Eugene J. Comey, Katherine Connor Linton, Paul S. Rosenzweig, Comey, Boyd & Luskin, Washington, DC, for F.D.I.C.

Richard D. Ralls, John W. McClelland, Christine L. Schlomann, King, Burke, Her-

shey, Farchmen & Schlomann, Kansas City, MO, Shawn E. DeGraff, Charles D. Lawhorn, David L. Polsley, Lawhorn, Simpson & Polsey, Kansas City, KS, for Country Hill Bank, Country Hill Bancshares, Inc., Phil R. Acuff, John W. Acuff, Erwin D. Rhodes, Anthony C. Sommers.

Michael P. Joyce, Ronald D. Lee, James R. Wyrsch, Wyrsch, Atwell, Mirakian, Lee & Hobbs, Kansas City, MO, for Lee H. Greif.

Neil E. Sprague, pro se.

William Grimshaw, Grimshaw & Rock, Chartered, Olathe, KS, Bruce C. Houdek, James, Millert, Houdek, Tyrl & Sommers, Kansas City, MO, for Byron L. Dougherty.

Gregory M. Garvin, Thomas C. Brown, Brown, Nachman & Sader, P.C., Kansas City, MO, for Harold M. Sader.

Lawrence A. Rouse, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for Bruce C. Rhoades, Jon D. Grams, Ward A. Katz, Seymour Zeinfeld, Larry L. Campbell, Kendrick T. Wallace, Saul Ellis, Melvyn Paul, James W. Sight.

Charles F. Marvine, Jr., Patrick M. Reidy, Dysart, Taylor, Penner, Lay & Lewandowski, P.C., Kansas City, MO, for Daniel F. Reardon and Phillip E. Forrest.

Stephen J. Bradford, pro se.

Phillip E. Forrest, pro se.

Stephen M. Tranckino, pro se.

Monte T. Grissom, pro se.

Gregory Kincaid, pro se.

Lawrence A. Rouse, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, Neil S. Sader, Thomas C. Brown, Brown, Nachman & Sader, P.C., Kansas City, MO, for Michael A. Azorsky.

Michael A. Azorsky, pro se.

Frederick H. Riesmeyer, II, J. Dale Youngs, Spradley & Riesmeyer, P.C., Kansas City, MO, for James M. Malouff, III, Jerome S. Metzger, Great American Development Corp.

Vito C. Barbieri, Hoskins, King, McGannon & Hahn, Kansas City, MO, for Wayne Henry and Sandra Henry.

Gardiner B. Davis, Douglas M. Weems, Spencer, Fane, Britt & Browne, Kansas City, MO, for Vanguard Packaging Inc.

W. Perry Brandt, Tammy L. Womack, Stinson, Mag & Fizzell, Kansas City, MO, for Deloitte & Touche.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

This case is before the court on the plaintiff's motion for reconsideration and to alter or amend the court's May 26, 1994, Memorandum and Order, pursuant to Fed.R.Civ.P. 59(e) and D.Kan. Rule 206 (Doc. 232). In that ruling, the court dismissed Count I of plaintiff's complaint against defendant Resolution Trust Corporation ("RTC"). After careful consideration, the court finds that ruling to have been incorrect. For the reasons set forth below, Count I of plaintiff's complaint is reinstated against the RTC. The motion for reconsideration is granted.

### I. Background

The court will briefly sketch the relevant facts and procedural history surrounding this case. The court's Memorandum and Order entered on May 26, 1994, contains a more complete discussion of the facts.

National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"), brought this declaratory judgment action seeking rescission of a $7 million directors' and officers' liability policy which it issued to Midland Bancor, Inc., and its subsidiaries. Defendants include various financial institutions and their directors and officers who were all insured under the policy. Also named as defendants are certain individuals and entities who either have made or potentially will make claims which fall within the policy's scope of coverage. On April 2, 1993, three of the financial institutions were declared insolvent and placed in receivership under either the RTC or Federal Deposit Insurance Corporation ("FDIC"). The RTC and FDIC have been appointed as conservators of the financial institutions involved, and they are also named as defendants.

Pursuant to the administrative claims procedure established by the Financial Institutions Reform, Recovery, and Enforcement

Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(d), National Union submitted a proof of claim for the policy's rescission and determination of noncoverage to the RTC on July 1, 1993, and to the FDIC on July 2, 1993. The FDIC denied the claim on September 16, 1993, and National Union filed this declaratory judgment action on November 12, 1993. On November 22, 1993, the RTC requested an extension of its claim determination period to February 27, 1994, but National Union never agreed to this extension.

National Union's complaint is divided into two counts. Count I seeks rescission of the policy on the grounds that Midland Bancor made materially false and misleading representations and warranties to National Union to induce it to underwrite the risk and issue the policy. Count II sets forth specific exclusions and endorsements which National Union alleges are applicable to defeat various claims under the policy.

The RTC filed a motion to dismiss Count I of the complaint, which the court construed as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), on the grounds that National Union failed to exhaust its administrative remedy. On May 26, 1994, the court granted the RTC's motion and dismissed Count I of National Union's complaint as to defendant RTC only.[1] The court based its ruling on FIRREA provisions which establish a mandatory claims procedure that deprives a district court of jurisdiction over suits filed before the claims procedure has been exhausted. In this case, the court found that National Union had not exhausted its administrative remedies relating to the RTC prior to filing suit.

## II. Legal Standards

■ This motion is brought as a motion to reconsider and to alter and amend judgment pursuant to Fed.R.Civ.P. 59(e). A motion to reconsider is a creature of local rule. See D.Kan. Rule 206(f); *Prudential Sec. Inc. v. LaPlant*, 151 F.R.D. 678, 679 (D.Kan.1993). A motion for reconsideration of an order

granting summary judgment or dismissal is essentially the same as a Rule 59(e) motion to alter or amend judgment. *All West Pet Supply Co. v. Hill's Pet Prod. Div., Colgate–Palmolive Co.*, 847 F.Supp. 858, 860 (D.Kan. 1994).

■ Whether to grant or deny a motion for reconsideration is committed to the court's discretion. *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988). In exercising that discretion, courts in general have recognized three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Estate of Pidcock v. Sunnyland America, Inc.*, 726 F.Supp. 1322, 1333 (S.D.Ga.1989); see *Major v. Benton*, 647 F.2d 110, 112 (10th Cir.1981).

## III. Analysis

National Union argues that its declaratory judgment action is not the type of action to which the jurisdictional bar contained in § 1821(d)(13)(D) applies. While National Union never conceded the issue, it was not specifically addressed in the arguments made in connection with the motion to dismiss. Since the RTC's motion to dismiss was filed on January 28, 1994, the Tenth Circuit has published two opinions which relate to this question. These opinions, coupled with other recent case law, warrant the reversal of this court's earlier ruling.

Section 1821(d)(13)(D) of FIRREA contains a jurisdictional bar which provides:

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver, including assets which the [RTC] may acquire from itself as such receiver; or

---

1. The RTC also contended that the court should decline jurisdiction over National Union's declaratory judgment action, and dismiss the complaint in its entirety. The court found that its exercise of jurisdiction over the declaratory judgment action was proper. That aspect of the court's May 26, 1994, Memorandum and Order is no longer an issue.

(ii) any claim relating to any act or omission of such institution or the [RTC] as receiver.

12 U.S.C. § 1821(d)(13)(D). The "[e]xcept as otherwise provided" language refers in part to the administrative claim procedure outlined in § 1821(d)(3)–(13).

■ It is a well-established principle of statutory construction that the "plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). Under the plain meaning of § 1821(d)(13)(D), the jurisdictional bar can be interpreted to apply if the insurance policy at issue in this case is an "asset" of the financial institution and if the declaratory judgment action seeking rescission of the policy is "an action seeking a determination of rights with respect to" that asset.

Such was the holding of the Third Circuit which recently addressed this issue and determined that the jurisdictional bar in § 1821(d)(13)(D) deprived a district court of jurisdiction to hear a declaratory judgment action for rescission of insurance policies against the RTC as receiver of a failed financial institution. In *National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Savings, F.S.B.*, 28 F.3d 376 (3d Cir.1994), the court held that the insurance policies issued by plaintiffs were "assets" of the financial institution and its subsidiaries. The court noted that FIRREA provided no definition for "assets," and so the court instead relied on the meaning of the term in legal and business usage. *Id.* at 384. The court concluded:

Insurance policies which a bank has purchased and under which it is an insured fall neatly within this definition of assets. Insurance policies obviously are important property interests of individuals and economic entities. Furthermore, we believe that business people consider an insurance policy to be an asset of the named insured, as the term "asset" is commonly used in the business world. Finally, reported court decisions have assumed that insur-

ance policies are assets of institutions which are holders of the policies.

*Id.* The Third Circuit also concluded that a declaratory judgment action is an "action seeking a determination of rights." *Id.* at 385.

After reviewing two recent decisions, however, the court finds that the Tenth Circuit would not reach the same conclusion. Both decisions discussed the meaning of the terms "claim" and "action" as used in § 1821(d)(13)(D). Applying the interpretation given those terms by the Tenth Circuit, this court finds that neither term encompasses the type of declaratory judgment action brought in this case.

In *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269 (10th Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 317, 130 L.Ed.2d 279 (1994), the court held that a district court has jurisdiction to hear claims which arise due to RTC's actions in managing an institutional asset after the institution enters receivership, prior to the exhaustion of FIRREA's administrative process. The court focused its analysis on § 1821(d)(13)(D), and acknowledged that standing alone the language in that section appeared to be very broad. *Id.* at 1273. The court, however, then proceeded to determine which claims are jurisdictionally barred under § 1821(d)(13)(D) by examining that section's meaning in the context of the entire administrative claims procedure:

In interpreting a statutory provision, "context and structure are, as in examining any legal instrument, of substantial import in the interpretive exercise." ... In this vein we note that § 1821(d)(13)(D) as quoted above is one part of an integrated administrative claims process under FIRREA outlined in 1821(d)(3)–(13). In fact, the jurisdictional ban in § 1821(d)(13)(D) is expressly tied to the remainder of the administrative claims process. It holds that no court shall have jurisdiction over claims "except as otherwise provided in [subsection 1821(d) ]." § 1821(d)(13)(D). Jurisdiction is "otherwise provided" for in subsection 1821(d) only for those "claims" which fit under the greater administrative process outlined therein. *See*

§ 1821(d)(6)(A). As a practical matter of statutory construction, then, we proceed on the assumption that *Congress intended the "claims" barred by § 1821(d)(13)(D) to parallel those contemplated under FIRREA's administrative claims process laid out in the greater part of § 1821(d).* *Id.* at 1273–74 (emphasis added) (internal citations omitted).

FIRREA's administrative claims process requires that the RTC give notice to creditors of the financial institution upon appointment of the receivership. § 1821(d)(3)(B).[2] Creditors then must file a claim with the RTC within a limited timeframe. *Id.* The RTC then has 180 days in which to allow or disallow the claim. § 1821(d)(5)(A)(i).[3] If the claim is disallowed or not ruled on within 180 days, the claimant can then seek judicial review of that claim. § 1821(d)(6)(A).[4]

In reviewing the statutory language contained in the sections outlining the administrative claims process, the *Homeland Stores* Court noted that "§ 1821(d)(10)(A), discussing the payment of claims found to be valid in the administrative process, mentions only 'creditor claims.'" 17 F.3d at 1275. The court also referred to the sections describing claim preferences and noted that these sections put "the claims process in the context of a conventional winding up of the debts accrued by an institution before entering receivership." *Id.* After reviewing these and other provisions, the court concluded that the term "claim," as used in § 1821(d)(13)(D) does not include claims brought against the RTC based on the RTC's own actions in managing the assets of a failed financial institution.

This interpretation of the terms "claim" and "action" as used in § 1821(d)(13)(D) was reaffirmed in another recent Tenth Circuit decision. In *Resolution Trust Corp. v. Love,* 36 F.3d 972 (10th Cir.1994), the court held that these terms do not encompass affirmative defenses and therefore a district court has jurisdiction over affirmative defenses even though they have not been first presented to the agency's administrative claims procedure. In reaching this conclusion the court also reviewed other FIRREA provisions in order to interpret the meaning of the terms "claim" and "action" contained in § 1821(d)(13)(D). The court concluded that "[s]uch a reading of FIRREA indicates that Congress did not intend for the terms 'claim' and 'action' to encompass affirmative defenses." *Id.* at 976.

The court first noted that § 1821(d)(3)(B) requires the RTC to give notice of the claims procedure only to creditors, and that creditors file their claims with the RTC. *Id.* The court found that this language "seems to negate the possibility that Congress intended to include as claims the affirmative defenses asserted by a defendant in response to a suit filed by the RTC. Party defendants in such cases would likely be in Love's position, i.e., debtors and not creditors of the RTC." *Id.*

This same conclusion—that the FIRREA administrative claims procedure applies only

---

**2.** Section 1821(d)(3)(B) provides in part:
The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution shall—(i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after publication of such notice ...

**3.** Section 1821(d)(5)(A)(i) provides:
Before the end of the 180–day period beginning on the date any claim against a depository institution is filed with the [RTC] as receiver, the [RTC] shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

**4.** Section 1821(d)(6)(A) provides:

Before the end of the 60–day period beginning on the earlier of—
(i) the end of the period described in paragraph (5)(A)(i) with respect to any claim against a depository institution for which the [RTC] is receiver; or
(ii) the date of any notice of disallowance of such claim pursuant to paragraph (5)(A)(i),
the claimant may request administrative review of the claim in accordance with subparagraph (A) or (B) of paragraph (7) or file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).

to claims of an institution's creditors—has been reached by a number of courts recently in the context of actions related to bankruptcy cases. In *Parker North American Corp. v. Resolution Trust Corp. (In re Parker North American Corp.)*, 24 F.3d 1145 (9th Cir.1994), a Chapter 11 debtor brought a preference proceeding against a financial institution which was later declared insolvent. The RTC contended that the failure of the debtor to file an administrative claim deprived the bankruptcy court of subject matter jurisdiction over the preference action. *Id.* at 1148.

The Ninth Circuit reviewed FIRREA's statutory language and legislative history and concluded that the bankruptcy court did have jurisdiction over the preference action. The court stated: "[W]e think that [the debtor's] preference action is not susceptible to resolution through FIRREA claims procedures because it does not constitute a claim by a creditor against the RTC. We agree with the courts that hold that FIRREA applies only to claims of *creditors* against the RTC and not to 'challenges incident to the [RTC]'s claims against its *debtors*.'" *Id.* at 1152 (quoting *FDIC v. Continental Fin. Resources, Inc. (In re Continental Fin. Resources, Inc.)*, 154 B.R. 385, 389 (D.Mass. 1993) (emphasis added)).[5] The court concluded that "a 'claim' under FIRREA means an obligation owed *by* the failed institution, and not an obligation owing *to* it." *Id.* at 1153 (quoting *Scott v. RTC (In re Scott)*, 157 B.R. 297, 310-11 (Bankr.W.D.Tex.1993)).

While the Tenth Circuit has not ruled directly on whether a declaratory judgment action, such as the one brought in the case at bar, is excluded from FIRREA's administrative claims procedure, applying the reasoning expressed in the *Homeland Stores* and *Love* cases leads to the conclusion that this type of declaratory judgment action is not subject to the claims procedure. As stated earlier, the jurisdictional bar in § 1821(d)(13)(D) must be read in the context of the other provisions in § 1821(d) relating

to the claims procedure. Considering these provisions together, the Tenth Circuit has concluded that only claims by creditors are meant to be jurisdictionally barred by § 1821(d)(13)(D). National Union's declaratory judgment action is not a creditor's claim. Since National Union potentially could be liable to the RTC if it is later determined that the RTC can collect under the insurance policy, National Union is a potential debtor, and its action seeking a declaration that the policy is rescinded is therefore a debtor's claim, not a creditor's claim.

The Third Circuit specifically rejected this line of reasoning when it determined that FIRREA's jurisdictional bar deprived a district court of jurisdiction to hear an insurer's declaratory judgment action for rescission. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. City Savings, F.S.B.*, 28 F.3d 376, 385-86 (3d Cir.1994). This outcome is directly related to the Third Circuit's approach in analyzing the statute. Instead of reading the jurisdictional bar contained in § 1821(d)(13)(D) in conjunction with the other provisions in § 1821(d) concerning the administrative claims procedure, the Third Circuit's position is that the jurisdictional bar "would appear to cover a larger class of actions than does the language ... concerning the administrative claims procedure." *Id.* at 386; *see also id.* ("[W]e reject the suggestion that the broad bar to jurisdiction indicated by the plain language of § 1821(d)(13)(D) should be strained and limited by referring to the administrative claims procedure of § 1821(d)(3), (d)(5) and (d)(6).").

This view is in direct opposition to the approach taken by the Tenth Circuit in *Homeland Stores* and *Love*. In both cases, the court held that the jurisdictional bar in § 1821(d)(13)(D) must be read in context with the entire administrative claims procedure. *See Love*, 36 F.3d at 977 (finding various requirements of the administrative claims process inconsistent with an exhaustion requirement for affirmative defenses);

---

5. Other courts that have reached the same conclusion in the bankruptcy context include *FDIC v. Purcell (In re Purcell)*, 150 B.R. 111, 113-14 (D.Vt.1993); *Scott v. RTC (In re Scott)*, 157 B.R. 297, 310-13 (Bankr.W.D.Tex.1993); *All Season's Kitchen, Inc. v. FDIC (In re All Season's Kitchen, Inc.)*, 145 B.R. 391, 393-96 (Bankr.D.Vt.1992); and *Tamposi v. FDIC (In re Tamposi Family Inv. Properties)*, 159 B.R. 631, 637 (Bankr.D.N.H. 1993).

*Homeland Stores,* 17 F.3d at 1273 (jurisdictional bar "is one part of an integrated administrative claims process under FIRREA outlined in § 1821(d)(3)–(13)"). This analysis led the Tenth Circuit to the conclusion that "Congress intended the 'claims' barred by § 1821(d)(13)(D) to parallel those contemplated under FIRREA's administrative claims process laid out in the greater part of § 1821(d)." *Homeland Stores,* 17 F.3d at 1274.

■ It could be argued that even if a declaratory judgment action seeking rescission of an insurance policy is not the type of action addressed by the administrative claims procedure, it is still outside the court's jurisdiction by reason of a more comprehensive jurisdictional bar required by § 1821(d)(13)(D). This argument would reason that a declaratory judgment suit is an "action seeking a determination of rights" which is specifically barred from district court jurisdiction by § 1821(d)(13)(D). Thus, according to this argument, even if this declaratory judgment action is not the type of claim covered by the administrative claims procedure, it is still an "action" jurisdictionally barred by § 1821(d)(13)(D).

This is the position advanced by the Third Circuit which sees no reason "why a jurisdictional bar which might cover a larger class of actions than would be addressed by the administrative claims procedure would be inconsistent with the general goals of Congress." *City Savings,* 28 F.3d at 388. That court provided the following explanation for Congress to have set up such a scheme:

> The rationale for this treatment of actions which do not seek payment from the assets of a failed institution would be that if the RTC leaves the party wishing to bring an action not seeking payment alone, that party should also leave the RTC alone. Accordingly, a party wishing to bring an action not seeking payment cannot summon the RTC into court to adjudicate a declaration of rights against the RTC. Rather, the party wishing to bring an action not for payment must instead wait and see if the RTC will sue her. If it does, then she will be able to defend herself against the RTC's action at that time.

*Id.*

The problem with applying such a rationale to a case such as this is that a claim on the policy may be made against National Union by a party other than the RTC. In that situation, National Union would be able to raise its defense, but would be unable to bring in all the parties which have an interest in the policy. As a result, National Union would face the prospect of piecemeal litigation and possible inconsistent judgments, the very hazards that declaratory judgment actions are intended to avoid.

■ The conclusion that this court has jurisdiction over National Union's declaratory judgment action against the RTC is further supported by the holding in *Love* that "affirmative defenses do not require administrative exhaustion under FIRREA." 36 F.3d at 974. An action to rescind an insurance policy can take the form of an affirmative defense after a claim is made on the policy. In this case, National Union's declaratory judgment action is in substance an affirmative defense. If National Union is successful, the declaratory judgment will act as a defense to any potential claims that the RTC may bring under the policy. Therefore, under the *Love* decision, this court has jurisdiction to adjudicate this defense.

■ Finally, the outcome in this case is not changed by the fact that the RTC provided National Union with the notice required by § 1821(d)(3)(B) and that National Union filed an administrative claim.[6] In *Homeland Stores,* the court was not persuaded by the fact that the RTC asserted that it would hear all claims, including claims arising after receivership such as the ones in that case. The court determined that it must still look to the plain language of the statute to determine whether the administrative claims process was applicable. 17 F.3d at 1274 n. 5.

---

**6.** RTC's motion to dismiss was not based on National Union's failure to file an administrative claim, but rather that National Union filed its lawsuit before either the RTC had disallowed the claim or 180 days had elapsed from the date the claim was filed. Thus, the suit was filed before the 60–day window defined in § 1821(d)(6)(A). This 60–day window has now long since passed.

Similarly, the fact that National Union filed an administrative claim does not necessarily mean that its claim was the type to which the claims process applied. When interpreting the jurisdictional bar in § 1821(d)(13)(D), the court must be guided by the statute's language and context. If National Union's declaratory judgment action is not the type of action contemplated by either the claims process or the jurisdictional bar, the fact that National Union filed an administrative claim does not change this result.

## IV. Conclusion

The Tenth Circuit decisions in *Homeland Stores* and *Love* establish that the claims and actions included in the § 1821(d)(13)(D) jurisdictional bar are identical to those for which the FIRREA administrative claims procedure applies. The administrative claims procedure, as defined by other provisions within § 1821(d), applies only to claims of a financial institution's creditors. As a result, the declaratory judgment action in this case is not subject to either the administrative claims procedure or the jurisdictional bar. As a result, Count I of plaintiff's complaint against the RTC must be reinstated.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for reconsideration and to alter or amend the court's judgment (Doc. 232) is granted. The court's May 26, 1994, Memorandum and Order is revised to reinstate Count I of plaintiff's complaint against defendant RTC.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**