HOMELAND STORES, INC.,
Plaintiff–Appellee,

v.

RESOLUTION TRUST CORPORATION,
Defendant–Appellant,

and

Bob's Super Saver, Inc., Defendant.

No. 93–3043.

United States Court of Appeals,
Tenth Circuit.

Feb. 23, 1994.

Rehearing Denied April 25, 1994.

Attorney, Kansas City Consolidated Office, Resolution Trust Corporation, Kansas City, Missouri; and Kirk K. Van Tine, Wendy J. Lang, Kelly A. Riley, and Linda C. Wang, Baker & Botts, L.L.P., Washington, D.C., with him on the briefs), Counsel, Resolution Trust Corporation, Washington, D.C., for the Defendant–Appellant.

Harvey D. Ellis, Jr. (L.E. Stringer, Crowe & Dunlevy, Oklahoma City, Oklahoma; and James D. Oliver, Foulston & Siefkin, Wichita, Kansas, with him on the brief), Crowe & Dunlevy, Oklahoma City, Oklahoma, for the Plaintiff–Appellee.

Before TACHA, GOODWIN *, and BRORBY, Circuit Judges.

TACHA, Circuit Judge.

The district court found that it has jurisdiction to hear Homeland Stores' claims against the Resolution Trust Corporation ("RTC"). The court then certified for interlocutory appeal and the RTC now appeals the district court's ruling. We exercise jurisdiction pursuant to 28 U.S.C. § 1292(b) and affirm.

## I. Background

Mid Kansas Savings & Loan Association of Wichita, Kansas ("Mid Kansas"), and First Federal Savings & Loan Association of Coffeyville, Kansas ("First Federal"), succeeded to ownership of the Belmont Square Shopping Center ("Belmont Square") in Parsons, Kansas. Homeland Stores, Inc. ("Homeland") was assigned a lease in Belmont Square and operates a retail grocery store there.

In 1989, pursuant to 12 U.S.C. §§ 1464(d)(2) and 1441a(b), the RTC was appointed receiver for both First Federal and Mid Kansas. As part of this receivership, the RTC took over management of Belmont Square, a receivership asset.

Homeland's Belmont Square lease provides for the presence of an "anchor tenant" in a 40,000 square foot space in the shopping

P. Matthew Sutko (Munsell St. Clair, Counsel, Resolution Trust Corporation, Washington, D.C.; Richard A. Shull, Senior

---

* The Honorable Alfred T. Goodwin, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

center. After the original anchor tenant, T.G. & Y., and a subsequent anchor tenant vacated that space, the RTC leased it to Bob's Super Saver, Inc. ("Bob's"). Homeland contends that RTC's execution of the lease to Bob's violates Homeland's lease which calls for the presence of T.G. & Y. or some other anchor tenant "similar" to T.G. & Y. and "acceptable" to Homeland. Homeland asserts that Bob's is neither a similar nor an acceptable anchor tenant because Bob's runs the same type of store as is run by Homeland itself.

Homeland filed suit against the RTC in the United States District Court for the District of Kansas alleging a material breach of its lease and seeking monetary damages and injunctive relief. Homeland also contends that the RTC has failed to maintain adequately the Belmont Square parking lot and seeks monetary damages on this basis as well.

The RTC moved, under Fed.R.Civ.P. 12(b)(6), to dismiss Homeland's action for failure to state a claim upon which relief can be granted. The RTC argued that: (1) pursuant to 12 U.S.C. § 1821(j), the injunctive relief requested by Homeland is not available, and (2) pursuant to 12 U.S.C. § 1821(d)(13)(D), the district court does not have jurisdiction to hear Homeland's damages claims. In an October 13, 1992 order, the district court denied the RTC's motion. It found that because Homeland's claims are not creditor claims arising before Mid Kansas and First Federal entered receivership, but rather are claims arising from actions of the RTC in managing a receivership asset, they are not subject to the administrative claims process required under 12 U.S.C. §§ 1821(d)(3)–(13). As a result, the district court found that it has jurisdiction to hear Homeland's claims. With respect to the possibility of relief, the court found that, while 12 U.S.C. § 1821(j) prohibits injunctive relief against the RTC, relief in the form of monetary damages could be granted.

After denying the RTC's motion to reconsider, the district court certified its October 13, 1992 order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The court expressly declined Homeland's request to certi-

fy the specific question as to whether injunctive relief is available against the RTC, though the issue was discussed in its October 13, 1992 order. On February 23, 1993, we granted the RTC's petition to appeal the interlocutory order under 28 U.S.C. § 1292(b).

## II. District Court's § 1292(b) Certification and Homeland's Motion to Raise Related Issue

We first address Homeland's motion that it be permitted in this interlocutory appeal to raise the issue of whether injunctive relief is available against the RTC. The motion is denied.

■ Our jurisdiction to hear this appeal arises pursuant to 28 U.S.C. § 1292(b). Under § 1292(b), a district court may certify for appeal an otherwise unappealable interlocutory order if the court determines that "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Id.* In this case, the question of law the district court intended to certify is whether federal court jurisdiction over Homeland's claims against the RTC is barred under 12 U.S.C. § 1821(d)(13)(D). The district court, however, explicitly refused to certify the additional question of whether injunctive relief is available against the RTC, though the court discussed that issue in the same order in which it ruled on jurisdiction. Nevertheless, Homeland asks us to address the question of the availability of injunctive relief.

The district court certification requirement of § 1292(b) is to be taken seriously. It was not included in the original § 1292(b) legislation as proposed but specifically was added to the final version as a necessary screening mechanism for interlocutory appeals. 16 Charles A. Wright, et al., Federal Practice and Procedure § 3929, at 138 (1977). However, Homeland correctly points out that it is the district court *order* that is certified under § 1292(b) and not the specific question of law deemed controlling by the district court. *See*

*United States v. Stanley*, 483 U.S. 669, 677, 107 S.Ct. 3054, 3060, 97 L.Ed.2d 550 (1987). Homeland contends that, because the certified order discussed the question of injunctive relief along with the question of federal jurisdiction, we can and should address the injunctive relief issue in this appeal. We disagree.

If we find that a particular question other than the question specifically identified by the district court controls the disposition of the certified order, we may, and indeed should, address that question. *See id.; Ivy Club v. Edwards*, 943 F.2d 270, 275 (3d Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1282, 117 L.Ed.2d 507 (1992); *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir.), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98 L.Ed.2d 225 (1987). In this case, however, whether injunctive relief is available against the RTC is not such an alternate controlling question. The order appealed from concerns whether Homeland's complaint states a claim upon which relief can be granted. Homeland's request for injunctive relief is only as a specific type of remedy for its breach of contract claims. Because we hold (in Section III below) that Homeland's complaint does state a claim and, at minimum, relief would be available in the form of damages at law, we need not decide on the availability of any specific type of alternate relief here. Thus, we do not address the question of the availability of injunctive relief.[1]

### III. District Court Jurisdiction Under FIRREA

We now come to the main issue in this case. The RTC contends that the district court erred in ruling that it has jurisdiction to hear Homeland's breach of contract claims and, therefore, in denying the RTC's

12(b)(6) motion to dismiss for failure to state a claim. Whether the district court has jurisdiction to consider Homeland's claims is a question of law which we review *de novo. See Cooper v. American Auto. Ins. Co.*, 978 F.2d 602, 611 n. 7 (10th Cir.1992); *see also Boone v. Carlsbad Bancorp.*, 972 F.2d 1545, 1551 (10th Cir.1992) (stating that, as a general matter, we review *de novo* an order regarding a motion to dismiss for failure to state a claim).

We are presented here with a question of first impression in this circuit: does 12 U.S.C. § 1821(d)(13)(D) bar federal district courts from considering claims such as Homeland's, which arise due to RTC action in managing an institutional asset after an institution enters receivership, pending exhaustion of administrative process provided for under the Financial Institutions Reform, Recovery, and Enforcement Act (FIRREA), codified in relevant part at 12 U.S.C. §§ 1821(d)(3)–(13).

The RTC suggests that our decision in *RTC v. Mustang Partners*, 946 F.2d 103 (10th Cir.1991) controls. However, while we held in *Mustang Partners* that administrative exhaustion was required for district court jurisdiction, the case involved a creditor claim that arose before the depository institution entered receivership. *See id.* at 106 ("No interpretation [of FIRREA] is possible which would excuse [the administrative claims] requirement for creditors with suits pending. . . ."). Similarly, most of the other cases cited by the RTC for the proposition that administrative exhaustion is required involve claims arising before an institution entered receivership rather than from the actions of the RTC in managing an institution's assets after receivership, as is the case here. *See, e.g., Capitol Leasing Co. v. FDIC*, 999

---

1. One further preliminary issue requires our attention. On September 27, 1993, the RTC submitted a letter pursuant to Fed.R.App.P. 28(j) drawing the court's attention to *RTC v. Midwest Fed. Sav. Bank*, 4 F.3d 1490 (9th Cir.1993), as supplemental authority. On September 29, 1993, Homeland submitted a response. The RTC moves to strike Homeland's response as argumentative and, therefore, prohibited under Rule 28(j). We agree with the RTC that Homeland's September 29, 1993 response, consisting of two single-spaced pages of narrative, is argumenta-

tive. We therefore grant the RTC's motion to strike it. However, we reject the RTC's suggestion that we sanction Homeland for acting in bad faith, especially in light of the fact that, under a strict definition of what constitutes argumentation, the RTC's original September 27, 1993 submission is also somewhat argumentative, thereby provoking a response. We note additionally that, despite granting the RTC's motion here, we are capable of reading and analyzing on our own the supplemental case involved.

F.2d 188 (7th Cir.1993); *Office & Professional Employees Int'l Union, Local 2 v. FDIC,* 962 F.2d 63 (D.C.Cir.1992); *Meliezer v. RTC,* 952 F.2d 879, 881 (5th Cir.1992); *RTC v. Elman,* 949 F.2d 624, 627 (2d Cir.1991); *FDIC v. Shain, Schaffer & Rafanello,* 944 F.2d 129, 136 (3d Cir.1991). We therefore return to the statute to answer the somewhat different question presented in this case.[2]

FIRREA, at 12 U.S.C. § 1821(d)(13)(D), contains language barring federal court jurisdiction over certain claims against the RTC as receiver for failed financial institutions pending the exhaustion of administrative process outlined in the same subsection (§ 1821(d)). Section 1821(d)(13)(D) reads:

(D) Limitation on judicial review

Except as otherwise provided in this subsection [i.e., after administrative process is pursued sufficiently under 12 U.S.C. § 1821(d)(6)(A)], no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [RTC] has been appointed receiver, including assets which the [RTC] may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the [RTC] as receiver.

12 U.S.C. § 1821(d)(13)(D). Standing alone, this language appears very broad. The RTC argues that it is broad enough to encompass, and therefore to bar, the claims at issue here.[3] We disagree.

■ We begin with the established principle of statutory construction that, if possible, "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous." *FDIC v. Canfield,* 967 F.2d 443, 447 (10th Cir.) (citation omitted), *cert. dismissed,* —— U.S. ——, 113 S.Ct. 516, 121 L.Ed.2d 527 (1992); *see also Kenneth v. Schmoll,* 482 F.2d 90, 93 (10th Cir.1973). The RTC asserts that to find that the district court has jurisdiction over the claims at issue here would violate the above principle by reading § 1821(d)(13)(D) out of FIRREA for purposes of this case.

■ Were we to read § 1821(d)(13)(D) in a vacuum we might agree. However, we do not determine in a vacuum which "claims" are jurisdictionally barred under this subsection. In interpreting a statutory provision, "context and structure are, as in examining any legal instrument, of substantial import in the interpretive exercise." *American Mining Congress v. EPA,* 824 F.2d 1177, 1185 (D.C.Cir.1987) (citing *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986); *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 18–19, 101 S.Ct. 1531, 1540–41, 67 L.Ed.2d 694 (1981); *Stafford v. Briggs,* 444 U.S. 527, 535, 100 S.Ct. 774, 780, 63 L.Ed.2d 1 (1980)); *see Aulston v. United States,* 915 F.2d 584, 589 (10th Cir.1990) ("In interpreting ... relevant language ... we look to the provisions of the whole law...."), *cert. denied,* 500 U.S. 916, 111 S.Ct. 2011, 114 L.Ed.2d 98 (1991) (citing *Dole v. United Steelworkers of America,* 494 U.S. 26, 35, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990)); *see also Johnson v. Home State Bank,* 501 U.S. 78, ——, 111 S.Ct. 2150, 2153, 115 L.Ed.2d 66 (1991) (stating that whether a surviving mortgage interest gives rise to a claim "subject to inclusion in a Chapter 13 reorganization plan is a straightforward issue of statutory construction to be resolved by reference to 'the text, history, and purpose' of the Bankruptcy Code"). In this vein we note that § 1821(d)(13)(D) as quoted above is one part of an integrated administrative claims process under FIRREA outlined in § 1821(d)(3)–(13). In fact, the jurisdictional ban in § 1821(d)(13)(D) is expressly tied to the remainder of the administrative claims process. It holds that no court shall have jurisdiction over claims "except as otherwise

---

**2.** We acknowledge that one of our sister circuits has in fact required administrative exhaustion for a claim which arose after a depository institution entered receivership. *See Rosa v. RTC,* 938 F.2d 383 (3d. Cir.1991). Though this factor weighs in our decision today, we look primarily to the language of the statute in making our determination.

**3.** It is undisputed in this case that Homeland did not pursue its claims through administrative process.

provided in [subsection 1821(d) ]." § 1821(d)(13)(D). Jurisdiction is "otherwise provided" for in subsection 1821(d) only for those "claims" which fit under the greater administrative process outlined therein. *See* § 1821(d)(6)(A). As a practical matter of statutory construction, then, we proceed on the assumption that Congress intended the "claims" barred by § 1821(d)(13)(D) to parallel those contemplated under FIRREA's administrative claims process laid out in the greater part of § 1821(d).

■ In examining the whole of this process it is evident that the term "claim" as used in § 1821(d)(13)(D) should be interpreted to exclude claims such as Homeland's arising from management actions of the RTC after taking over a depository institution. As the district court and Homeland suggest, much of § 1821(d) indicates that in requiring administrative review—and in the meantime forbidding federal court jurisdiction—of "claims," Congress had in mind creditor and related claims arising before an institution enters receivership. Most importantly, § 1821(d)(3)(B) requires that, after taking over as receiver, the RTC give notice to creditors who then have a limited amount of time (not less than 90 days) to present their claims to the RTC.[4] Claims not filed within the prescribed time limit are to be disallowed with such disallowance being final. *See* § 1821(d)(5)(C) (directing that the RTC dis-

allow any claims not filed before the deadline established under § 1821(d)(3)(B), except in very limited circumstances). Obviously, claims such as Homeland's arising after receivership and in the indeterminate future due to management actions of the RTC cannot have been contemplated when such deadlines for filing administrative claims were set. Put another way, by the plain language of the statute, FIRREA's administrative process is closed to Homeland for purposes of the claims at issue in this case.[5]

The claims filing deadlines of § 1821(d)(3)(B) have already led several courts to hold that the jurisdictional ban of § 1821(d)(13)(D) is inapplicable in certain circumstances. For example, in *RTC v. Midwest Fed. Sav. Bank*, 4 F.3d 1490 (9th Cir. 1993), the Ninth Circuit held that, even though the defendant has not exhausted the administrative procedures established by FIRREA, § 1821(d)(13)(D) does not divest a district court of jurisdiction where an affirmative defense is presented in response to an RTC claim. The court said:

[T]he court's consideration of subsection d of Section 1821 in its entirety leads the court to conclude that even if the plain language of § 1821(d)(13)(D) were read or understood to include affirmative defenses, an exception to the plain meaning rule of statutory construction would apply because such a literal application of the statute

4. In its entirety, § 1821(d)(3)(B) reads:
    The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall—
    (i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and
    (ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

5. Though the RTC asserts that it will hear all administrative claims, including Homeland's claims in this case, we must first look to the plain language of the statute as we have done here.
    This plain language also highlights the need for parallel construction of the statute. Because Homeland's claims are not "claims" contemplated under the administrative process, were we nonetheless to find these claims included in the jurisdictional bar of § 1821(d)(13)(D), Homeland

would have neither an administrative nor a judicial forum for the claims. Such an outcome raises constitutional problems. In *Coit Independence Joint Venture v. FSLIC*, 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), the Supreme Court noted that an interpretation of former FSLIC statutory claims procedures which did not allow for *de novo* review by federal courts after a defined, reasonable period of time raised "serious constitutional difficulties." *Id.* at 579, 109 S.Ct. at 1371. In this case the outcome would be that much more problematic because Homeland would not only be denied timely judicial review, but all review. Further, such an outcome is not consistent with the intent of Congress in formulating the FIRREA claims process. *See* H.R.Rep. No. 54, 101st Cong., 1st Sess., pt. 1 at 418 (1989) U.S.Code Cong. & Admin.News 1989, p. 86 (indicating that, in setting up the FIRREA claims process, Congress intended to be responsive to the constitutional concerns raised by the Supreme Court in *Coit*).

would produce a result demonstrably at odds with the intention of the drafters evidenced in the remainder of Section 1821(d), and would lead to the 'patently absurd consequence' of requiring presentment and proof to the RTC of all potential affirmative defenses that might be asserted in response to unknown and unasserted claims or actions by the RTC.

*Id.* at 1497 (quoting *RTC v. Conner,* 817 F.Supp. 98, 102 (W.D.Okla.1993)). In *Heno v. FDIC,* 996 F.2d 429 (1st Cir.1993), the First Circuit, though in the context of a § 1821(e) contract repudiation by the RTC, suggests an analysis similar to the Ninth Circuit's.[6] The court found that "unless Heno's claim is 'against the assets' of the Bank, rather than against the FDIC, it need not (indeed could not) have been filed prior to the … bar date [established pursuant to § 1821(d)(3)(B) ] since the FDIC did not repudiate the Bank's agreement with Heno until almost six months *after* the bar date." *Id.* at 433–34 (emphasis added). This reasoning is equally applicable to claims such as Homeland's that arise from management actions of the RTC after a depository institution enters receivership.

Significant portions of the remainder of § 1821(d) also suggest that "claims," as used therein, does not include claims such as Homeland's. For example, § 1821(d)(10)(A), discussing the payment of claims found to be valid in the administrative process, mentions only "creditor claims." Additionally, the statute outlines claim preferences putting the claims process in the context of a conventional winding up of the debts accrued by an institution before entering receivership. *See* 12 U.S.C. § 1821(d)(8)(A) (discussing preferences for claims involving security interests); 12 U.S.C. § 1821(d)(11) (discussing distribution of assets in general and in particular the payment of depositor claims and the distribution of remaining amounts to shareholders). Finally, throughout § 1821(d) the RTC is referred to primarily in its capacity as receiver. *See, e.g.,* § 1821(d)(13)(D) (barring court

jurisdiction over "any claim relating to any act or omission of such institution or the [RTC] *as receiver*") (emphasis added). This is significant because § 1821(d)(2) defines the RTC's duties as conservator and as receiver differently. As "conservator," the RTC may "take such action as may be—(i) necessary to put the insured depository institution in a sound and solvent condition; and (ii) appropriate to carry on the business of the institution and preserve and conserve the assets and property of the institution." § 1821(d)(2)(D). By contrast, as "receiver," the RTC may "place the insured depository institution in liquidation and proceed to realize upon the assets of the institution, having due regard to the conditions of credit in the locality." § 1821(d)(2)(E). Though the lines between the two functions may blur at times, the management actions taken by the RTC giving rise to Homeland's claims fall more squarely under the RTC's powers as "conservator." That the RTC is referred to in § 1821(d) primarily in its capacity as "receiver" suggests that Homeland's actions are not covered by the jurisdictional bar therein.

None of these factors standing alone necessarily dictate the outcome we reach today. However, taken together and especially in light of the time bar established in §§ 1821(d)(3)(B) and (d)(5)(C), they lead us to the conclusion we reach here. We note that in reaching this conclusion we split with one of our sister circuits which has addressed a similar question. *See Rosa v. RTC,* 938 F.2d 383, 392 (3d Cir.) (holding that FIR-REA's jurisdictional bar does encompass a claim arising from post receivership actions of the RTC), *cert. denied,* — U.S. —, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991). We believe that our reading of the statute more accurately reflects its language as a whole.

## V. Conclusion

In sum, we find that the language of 12 U.S.C. § 1821(d) dictates that the term "claim" as used in subsection § 1821(d)(13)(D) does not include Home-

---

**6.** We do not decide the case at bar under the framework of § 1821(e) because that section is relevant only where the RTC expressly repudiates a contract. Neither party contends that the RTC exercised its § 1821(e) repudiation power. Rather, the issue on the merits presumably would be whether the RTC indeed violated the Homeland lease.

land's claims against the RTC in this case. As a result, the district court has jurisdiction to hear these claims without first requiring any administrative process. The district court's order denying the RTC's motion to dismiss is **AFFIRMED.**