**SILVA BROTHERS INVESTMENT INC., Plaintiff,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, and New Bank of New England, Defendants.**

No. 94–11047.

United States District Court,
D. Massachusetts.

July 14, 1995.

James S. Timmins, Patsos & Timmins, Quincy, MA, for plaintiff.

Clark van der Velde, FDIC Legal Services, Boston, MA, for defendant FDIC.

LASKER, District Judge.

In 1985, Silva Brothers Investment borrowed $750,000 from Security National Bank. To secure the loan, Silva Brothers assigned a mortgage—of which it the owner—to the bank. It was agreed that once Silva Brothers repaid the loan, the mortgage would be reassigned to Silva Brothers. While the loan was in repayment, Security National failed. The FDIC appointed a bridge bank, New Bank of New England (New Bank), to continue the affairs of the failed Security National Bank. In January, 1991, Silva Brothers repaid the loan in its entirety. Rather than reassigning the mortgage to Silva Brothers, however, New Bank mistakenly discharged the mortgage, which secured a debt owed to Silva Brothers.

In July, 1991, New Bank failed, and the FDIC was appointed its receiver. In accordance with the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), codified at 12 U.S.C. § 1821, the FDIC notified all known creditors of New Bank that claims against the assets of New Bank must be submitted for administrative review by November 14, 1991. Because Silva Brothers had never objected to the wrongful mortgage discharge by New Bank, New Bank was unaware of Silva Brothers' claim and Silva Brothers was not personally notified of the FIRREA procedure or the bar date for filing claims. However, the FDIC did publish such information in several newspapers to notify creditors not known to the FDIC. Silva Brothers did not file an administrative claim in 1991.

Silva Brothers first objected to New Bank's error in 1992, when it sent a written demand to New Bank at its former address. By this time, New Bank was out of business, and Silva Brothers received no response to its letter. Thirteen months later, in August, 1993, Silva Brothers sent a second demand, this time addressed to the FDIC, and received a letter stating that the matter would be looked into by FDIC counsel. In September of 1994, Silva Brothers filed this suit against the FDIC. After receiving notice of the lawsuit, the FDIC—complying with 12 U.S.C. § 1821(d)(3)(C), a provision of FIRREA which requires that late-discovered creditors of failed institutions be notified of receivership by the FDIC and given a fresh opportunity to file an administrative claim—sent Silva Brothers a new proof of claim form, to be filed within 90 days. Although it

received the notice, Silva Brothers again failed its claim under FIRREA.

The FDIC moves to dismiss Silva Brothers' complaint, contending that, because Silva Brothers failed to observe the requirements of the administrative claims process, that is, failed timely to file an administrative claim, this Court has no jurisdiction. Silva Brothers argues that, because New Bank was a bridge bank organized by the FDIC, its claim should be deemed a claim against the FDIC itself, and that, therefore, the procedures prescribed by FIRREA are inapplicable.

■ Silva Brothers does not dispute that, under FIRREA, any claim against a failed bank must be submitted as an administrative claim before it may become ground for a lawsuit. See 12 U.S.C. (d)(13)(D). In *Marquis v. FDIC*, 965 F.2d 1148 (1992), the First Circuit held:

> FIRREA makes participation in the administrative claims review process mandatory for all parties asserting claims against failed institutions.... [W]here a claimant has been properly notified of the appointment of a federal insurer as receiver, 12 U.S.C. § 1821(d)(3)(B)–(C), and has nonetheless failed to initiate an administrative claim within the filing period, 12 U.S.C. § 1821(d)(3)(B)(i), the claimant necessarily forfeits any right to pursue a claim against the failed institution's assets in any court.

*Id.* at 1152. Silva Brothers' argument that its claim is not subject to FIRREA's administrative procedure depends, therefore, on whether its claim against New Bank is a claim against a "failed institution". Silva Brothers contends that because New Bank was a bridge bank organized by the FDIC, it was not an ordinary failed institution, but rather a failed instrument of the FDIC.

The theory that a bridge bank is an instrumentality of the FDIC has been rejected by at least two courts. In *FDIC v. Greenberg*, 851 F.Supp. 15 (D.Mass.1994), Judge Ponsor of this District held that a bridge bank "steps into the shoes of the *failed bank*, not the FDIC." *Id.* at 23 (emphasis in original) (holding that oral statements made by a bridge bank are not considered statements by the FDIC for the purposes of the *D'Oench Duhme* doctrine). The *Greenberg* Court relied heavily upon a provision of FIRREA which specifies that "[a] bridge bank is not an agency, establishment, or instrumentality of the United States." 12 U.S.C. § 1821(n)(6)(A). Similarly, in *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587 (1995), the Eleventh Circuit concluded that, under § 1821(n)(6)(A), a bridge bank is not an extension of the FDIC, and that, accordingly, federal banking regulatory agencies cannot be held vicariously liable for negligence in the administration or operation of a bridge bank. *Id.* at 591 & n. 1.

The conclusion that Silva Brothers' claim against New Bank was required to be submitted to FIRREA's administrative claims process is consistent with 12 U.S.C. § 1821(n)(12)(B), a provision of FIRREA which specifies that "[t]he Corporation as receiver shall wind up the affairs of the bridge bank in conformity with the provisions of law relating to the liquidation of closed national banks." This provision for administrative review of creditors' claims against the assets of federally chartered bridge banks belies Silva Brothers' assertion that such claims are exempt from such review.

■ Silva Brothers contends that because its claim arose after the failure of Security National, the bank with which Silva Brothers originally contracted, Silva Brothers' complaint alleges a "post-receivership" claim which the Court is authorized to hear, and that this position is supported by *Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1274 (10th Cir.1994). There, the Court held that FIRREA's jurisdictional bar did not prevent the Court from deciding a claim arising from post-receivership acts of the Resolution Trust Corporation:

> It is evident that the term 'claim' as used in § 1821(d)(13)(D) [FIRREA's limitation on judicial review] should be interpreted to exclude claims ... arising from management actions of the RTC after taking over a depository institution.... [M]uch of § 1821(d) indicates that in requiring administrative review—and in the meantime forbidding federal court jurisdiction—of 'claims,' Congress had in mind creditor and

related claims arising before an institution enters receivership.

*Homeland* is inapposite for two reasons. First, the Court's holding concerns only claims arising after receivership *by regulators* (in that case the Resolution Trust Corporation). Security National's business was assumed by a bridge bank, and this distinction is meaningful for the reasons already discussed. Second, and more important, FIRREA's administrative claims process was never available to the *Homeland* plaintiff, whose claim didn't arise until after all administrative bar dates had passed. That this was a significant factor in the Court's decision is clear:

> *Most importantly,* [FIRREA] requires that, after taking over as receiver, the RTC give notice to creditors who then have a limited amount of time (not less than 90 days) to present their claims to the RTC. Claims not filed within the prescribed time limit are to be disallowed with such disallowance being final.... Obviously, claims ... arising after receivership and in the indeterminate future due to management decisions of the RTC cannot have been contemplated when such deadlines for filing administrative claims were set.

*Id.* at 1274 (emphasis supplied). In a footnote, the Court acknowledged that, were it to find the claims at issue barred under FIRREA, the plaintiff would have access neither to an administrative nor a judicial forum. "Such an outcome," the Court wrote, "raises constitutional problems." *Id.* at 1274 n. 5. Silva Brothers asserts that, like the *Homeland* plaintiff, it was deprived of an opportunity to file an administrative claim. That is simply untrue: Even if Silva Brothers did not note the published newspaper announcements in 1991, it acknowledges that it received, by mail, notice of a second invitation to file a claim in 1994. Silva Brothers, therefore, was never in the difficult position recognized by the Court in *Homeland.*[1]

Having failed to submit its claim against New Bank to the administrative process provided by FIRREA, Silva Brothers is precluded from litigating the matter before this Court. Accordingly, the FDIC's motion to dismiss is granted.

It is so ordered.

---

1. Silva Brothers contends that its 1992 and 1993 demand letters—to the defunct New Bank headquarters and to a branch of the FDIC—amount to an "effort" to make a claim under FIRREA, and that, therefore, Silva Brothers should not be precluded from bringing this lawsuit. In light of the fact that Silva Brothers admits to having deliberately failed to file a claim under FIRREA in 1994, this argument is unpersuasive.