UNITED STATES COURT OF APPEALS
**Filed 6/12/96**
TENTH CIRCUIT

EARL R. COLMAN and
DOROTHY P. COLMAN,
husband and wife,

    Plaintiffs - Appellants,

      v.

WENDOVER FUNDING, INC.,

    Defendant - Appellee.

No. 95-8051
(D.C. No. 94-CV-1025)
(D. Wyo.)

ORDER AND JUDGMENT[*]

Before BRORBY, BRISCOE, and LUCERO, Circuit Judges.

Plaintiffs Earl and Dorothy Colman appeal the summary judgment entered in favor

of defendant Wendover Funding, Inc. (Wendover). Plaintiffs originally filed this action

in state court seeking a declaratory judgment to declare the terms of the mortgage and

loan modification agreement which Wendover is allegedly responsible for servicing.

Plaintiffs also sought damages for alleged violations of the Truth-in-Lending Act and for

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

negligence in failing to provide a satisfactory accounting. Wendover removed the action to federal court. We affirm in part, reverse in part, and remand.

I.

On May 12, 1981, Earl Colman and his former wife, Catherine Colman, borrowed $150,000 from Provident Federal Savings and Loan Association (Provident) to purchase a home at 2650 South Poplar in Casper, Wyoming. The loan was secured by a 20-year mortgage with interest at 17.75 percent per year, with monthly principal and interest payments of $2,286.15.

On June 1, 1983, the parties executed a loan modification agreement which reduced the annual interest rate to 13 percent and the monthly payments to $1,779.20. On April 24, 1987, they executed a second modification agreement which reduced the annual interest rate to 10 percent and the monthly payments to $1,332.00. The second modification agreement provided in pertinent part:

> The next payment is due on the 1st day of April, 1987, to be applied first to interest at the rate of Ten Percent (10.000%) per annum upon the unpaid balance of said indebtedness and the balance to principal and such monthly payments shall continue until said indebtedness is paid in full.
> **This modification will expire 24 months from the due date of the first payment in this agreement.

Appellant's append. at 122. Earl Colman contends the last sentence quoted was inserted without the parties' knowledge or permission after the agreement had been signed. Although he acknowledges receiving a copy of the agreement with all of the quoted language, it appears to be his position that the parties did not become aware of the 24-

2

month limitation provision until sometime after October 1990. Moreover, it is uncontroverted that, notwithstanding the presence of this provision, the lower monthly payments continued through at least June 1990.

Subsequent to the modification agreements, Catherine Colman conveyed her interest in the property to Earl Colman and he assumed the obligations under the note and mortgage. On April 14, 1992, Dorothy Colman became a co-owner of the property.

Provident was declared insolvent on February 22, 1990, and Resolution Trust Corporation (RTC) was appointed as receiver. As part of the receivership transactions, a federal association was created entitled Provident Savings Association, F.A. (Provident F.A.). On February 23, 1990, a purchase and assumption agreement was entered into between RTC and Provident F.A. whereby Provident F.A. purchased various assets, including the subject note and mortgage. On August 17, 1990, RTC was appointed receiver for Provident F.A. and the note and mortgage were assigned to RTC.

Servicing on the loan was transferred to IMCO Realty Services (IMCO) in October 1990. From the limited record on appeal, it appears IMCO began to require payments larger than those made during the period of April 1987 through June 1990. It further appears that payments were somewhat sporadic during the time IMCO serviced the loan. On March 25, 1991, Wendover and RTC entered into a written agreement whereby Wendover agreed to act as servicing agent on behalf of RTC for various institutions, including Provident F.A. The loan was transferred to Wendover for servicing on

3

September 23, 1992.

Earl Colman alleged that, beginning in March 1991, he began to request information on the remaining loan balance in order to try to refinance the loan obligation. However, he alleges that he never received any understandable reply or explanation of the balance owing or calculations of the default amounts. Compounding the confusing history of the note and mortgage at issue is Earl Colman's Chapter 7 bankruptcy. He filed for protection under Chapter 11, and the case was later converted to a Chapter 7 bankruptcy. His discharge in bankruptcy was filed November 27, 1991. Although he did not reaffirm the note with RTC or Wendover, he has continued to make monthly payments and Wendover has accepted those payments. The record on appeal indicates each post-bankruptcy payment has been for approximately $1,206.57, an amount consistent with the monthly principal and interest due under the 1987 modification agreement.

## II.

We review the district court's grant of summary judgment de novo, applying the same standard as the district court under Fed. R. Civ. P. 56(c). Universal Money Centers v. American Tel. & Tel. Co., 22 F.3d 1527, 1529 (10th Cir.), cert. denied 115 S.Ct. 655 (1994). Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). We examine the factual record and reasonable inferences therefrom in the light

most favorable to the nonmoving party. Applied Genetics Intern. v. First Affiliated Securities, 912 F.2d 1238, 1241 (10th Cir. 1990). If there is no genuine issue of material fact in dispute, we must determine whether the district court correctly applied the law. Id.

III.

**A. Plaintiffs' claim for declaratory and injunctive relief.**

In count one of their complaint, plaintiffs sought a declaratory judgment setting forth the applicable terms and conditions of the note and mortgage, enjoining Wendover from accelerating the remaining balance on the note, and enjoining Wendover from initiating foreclosure proceedings against the property. In reviewing this claim, the district court concluded that RTC, as holder of the note and mortgage, was an indispensable party to the action under Fed. R. Civ. P. 19(a). The court further concluded that RTC could not be joined in the action because of limitations on jurisdiction over claims against RTC set forth in the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1811 et seq. Accordingly, the court granted summary judgment in favor of Wendover on count one of the complaint.

The section of FIRREA cited by the district court, 12 U.S.C. § 1821(d)(13)(D), contains a jurisdictional bar:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over--
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which [RTC] has been appointed receiver, including assets which [RTC] may acquire from itself as such receiver; or

5

(ii) any claim relating to any act or omission of such institution or [RTC] as receiver.

The "[e]xcept as otherwise provided" language refers in part to FIRREA's administrative claim procedure outlined in § 1821(d)(3)-(13). See National Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, 869 F. Supp. 880, 884 (D. Kan. 1994). Under this administrative claim procedure, the RTC must give notice to creditors of a financial institution upon appointment of a receivership. 12 U.S.C. § 1821(d)(3)(B). Creditors are then required to file a claim with RTC within a limited time frame. Id. After receiving a claim, RTC has 180 days in which to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A)(i). If a claim is disallowed or not ruled on by RTC within 180 days, the claimant can seek judicial review. 12 U.S.C. § 1821(d)(6)(A).

In Homeland Stores v. Resolution Trust Corp., 17 F.3d 1269, 1273 (10th Cir.), cert. denied 115 S. Ct. 317 (1994), this court acknowledged the language of § 1821(d)(13)(D), standing alone, is very broad. However, proceeding on the assumption that Congress intended the "claims" barred by § 1821(d)(13)(D) to parallel those contemplated under the FIRREA administrative claims process, this court examined the overall structure of the administrative claims process. The court concluded that "much of § 1821(d) indicates that in requiring administrative review--and in the meantime forbidding federal court jurisdiction--of 'claims,' Congress had in mind creditor and related claims arising before an institution enters receivership." Id. at 1274. The court further noted that the statutory provisions describing claim preferences put "the claims

6

process in the context of a conventional winding up of the debts accrued by an institution before entering receivership." Id. at 1275. Accordingly, the court concluded the term "claim," as used in § 1821(d)(13)(D), did not include claims brought against RTC based on its own actions in managing the assets of a failed financial institution.

Based in part upon the analysis of the FIRREA administrative claim process in Homeland, we conclude that plaintiffs' claim for declaratory relief against RTC is not jurisdictionally barred by §1821(d)(13)(D).[1]  First, plaintiffs are debtors, not creditors, of RTC. Accordingly, as concluded in Homeland, their claims are not the type that Congress had in mind when it enacted FIRREA's administrative claim process. 17 F.2d at 1274; see also In re Parker North American Corp., 24 F.3d 1145, 1152 (9th Cir. 1994) (holding FIRREA administrative claims process applies only to claims of creditors against RTC and not to challenges incident to RTC's claims against its debtors). Second, as debtors, plaintiffs would not have received any notice of receivership from RTC nor any notice that they needed to file claims against RTC via the administrative claims procedure. See 12 U.S.C. § 1821(d)(3)(B) (requiring RTC to "promptly publish a notice to the depository institution's creditors"). Third, even if plaintiffs had received notice of the receivership and of the administrative claims procedure, there would have been

_____

[1] Because of the narrow scope of the district court's ruling, we reach no conclusion concerning whether 12 U.S.C. § 1821(j) would prohibit the district court from granting all or part of plaintiffs' claim for declaratory relief against RTC. See 12 U.S.C. § 1821(j) (prohibiting courts from taking any action to "restrain or affect the exercise of powers or functions of [RTC] as a . . . receiver").

7

nothing to file because their claim for declaratory relief did not accrue until long after Provident was placed in receivership. Although plaintiffs focus heavily on the alleged wrongful conduct of Provident in 1987, the limited record on appeal suggests the dispute over the terms and conditions of the note and mortgage did not arise until IMCO began servicing the loan for RTC in late 1990. Further, it is arguable that the claim did not actually accrue until after Earl Colman's discharge in bankruptcy, at which time his retention of the property without reaffirmation of the debt called into question the terms of the agreement with RTC. Although we find it unnecessary to conclusively determine on appeal when the claim for declaratory relief accrued, we have little doubt that it did so after the time for filing administrative claims with RTC had expired. See 12 U.S.C. § 1821(d)(3)(B) and (d)(5)(C)(i) (providing administrative claims must be filed within ninety days after receiver publishes notice to creditors, and claims filed thereafter will be disallowed).

There is an additional basis for concluding plaintiffs' claim for declaratory relief is not subject to the FIRREA administrative process. Although neither the parties nor the district court gave consideration to the impact of Earl Colman's bankruptcy, we believe this event is significant. Under Chapter 7 of the Bankruptcy Code, if an individual debtor has consumer debts secured by property of the estate, the debtor must file a statement of intent with respect to such property. More specifically, the debtor must state whether he or she intended to retain or surrender the property, whether it will be claimed exempt,

8

whether the debtor intends to redeem the property, and whether the debtor intends to reaffirm the debt secured by the property. See 11 U.S.C. §§ 522 (exemptions), 722 (redemption), 524(c), (d) (reaffirmation). Some courts have held that a debtor must choose between surrender, reaffirmation, or redemption of collateral, while others, including this court, have held a debtor may continue making payments and retain collateral without redemption or reaffirmation if the debtor has remained current on the obligation. See Matter of Edwards, 901 F.2d 1383, 1387 (7th Cir. 1990) (debtor must reaffirm or redeem to keep property); contra In re Belanger, 962 F.2d 345, 347-48 (4th Cir. 1992); Lowry Federal Credit Union v. West, 882 F.2d 1543, 1546-47 (10th Cir. 1989) (debtor can continue to make payments without reaffirmation or redemption and creditor has no grounds to recover property). Here, because none of the bankruptcy pleadings were included in the record on appeal, we do not know whether Earl Colman filed a statement of intent with respect to the real property at issue. Regardless, it does not appear that he reaffirmed his debt with RTC/Wendover; instead, he simply continued to make payments during the pendency of his bankruptcy, and has continued to do so. Because Earl Colman did not reaffirm, there appears to be a significant question as to the terms of his agreement with RTC/Wendover. In particular, are they the same as the initial agreement or the 1987 modification, or did the bankruptcy wipe away part of the underlying debt and result in a new obligation? Moreover, has Wendover's acceptance of lower payments effectively resulted in an agreement consistent with the 1987

9

modification?  Although this court's decision in Lowry may authorize the course of action that Earl Colman has taken, it does not answer the question of what effect such actions had on the terms of the underlying obligation.  Finally, there is some question as to whether Lowry is applicable because of the late loan payments.  In light of these difficult issues of bankruptcy law, we conclude it is appropriate to have the matter decided in the first instance by the district court, not RTC.  See Parker, 24 F.3d at 1153 (noting RTC "has no special skill in determining bankruptcy questions"); see also In re Miraj and Sons, 192 B.R. 297, 310 (Bankr. D. Mass. 1996) (citing and agreeing with cases holding FIRREA administrative claims process does not apply to claims that arise incidentally to a bankruptcy court's determination of FDIC's claim against a debtor).

Finally, we note the parties' supplemental appellate briefs have raised a serious question concerning who is the actual holder of the note and mortgage.  The parties were directed to file supplemental briefs addressing several questions unanswered in their initial briefs.  In particular, the parties were asked to confirm whether Federal Deposit Insurance Corporation (FDIC), the successor to RTC, is the current holder of the note and mortgage.  See 12 U.S.C. § 1441a(m) (terminating RTC as of December 31, 1995, and appointing FDIC as successor).  Surprisingly, we were informed the note and mortgage had been transferred by RTC to Magnolia Federal Bank in Hattiesburg, Mississippi, on June 23, 1994, approximately five months prior to the time Wendover filed its motion for summary judgment and approximately one year prior to the entry of summary judgment in

10

favor of Wendover. According to plaintiffs, they were not informed of this alleged transfer.

Because Wendover failed to inform the district court of the alleged transfer of the note and mortgage,[2] we do not fault the district court for relying upon the information presented by the parties and finding that RTC was the holder of the note and mortgage. The basis for our reversal on this claim is the district court's ruling regarding the joinder of RTC as an indispensable party, and not these newly alleged facts. Nevertheless, in light of these new factual allegations (which we note have not yet been corroborated by any documents or other properly admitted evidence), it is necessary that the district court conclusively determine on remand who is the current holder of the note and mortgage and whether that person or entity can and should be added as a party to this case.

## B. Plaintiffs' Truth-in-Lending Act claim

In count two of their complaint, plaintiffs alleged Provident and Wendover failed to make various disclosures required under the Truth-in-Lending Act (TILA), 15 U.S.C. § 1631 *et seq*. The court dismissed this claim, finding plaintiffs had failed to produce any evidence demonstrating that Wendover (the only named defendant) was a "creditor" or an

---

[2] Assuming the note and mortgage were transferred by RTC in June 1994, we question whether defense counsel complied with Fed. R. Civ. P. 11 in preparing and filing Wendover's motion for summary judgment, which alleged RTC was holder of plaintiffs' note and mortgage. See Fed. R. Civ. P. 11(b)(3) (counsel's signature on pleading certifies "the allegations and other factual contentions have evidentiary support").

11

assignee of a creditor within the meaning of the TILA.

We conclude that plaintiffs' claim under the TILA was properly dismissed. First, plaintiffs failed to produce sufficient evidence to demonstrate that Wendover is a creditor under the TILA. In particular, plaintiffs failed to produce evidence indicating that Wendover regularly extends consumer credit or is the entity to whom the debt in this case is payable. See 15 U.S.C. § 1602(f) (defining "creditor" for purposes of TILA). Further, plaintiffs produced no evidence indicating that Wendover took assignment of the note or mortgage at issue; accordingly, Wendover cannot be held liable under the TILA as an assignee of Provident. See 15 U.S.C. § 1641 (discussing liability of assignees). Second, there is no evidence in the record that Wendover was involved in a "consumer credit transaction" within the meaning of the TILA. See 15 U.S.C. § 1638(a) and (b) (discussing requirements for consumer credit transactions). Although the phrase "consumer credit transaction" is not specifically defined in the TILA, there is no indication that the phrase was intended to encompass servicing of a debt by a third-party agent of a creditor. Finally, as suggested by Wendover, we conclude the 1987 modification was not a "refinancing" within the meaning of the TILA, and Provident was therefore not required to provide plaintiffs with new TILA disclosures. See 12 C.F.R. § 226.20(a)(2) (stating a "reduction in the annual percentage rate with a corresponding change in the payment schedule" does not constitute a "refinancing" for purposes of the TILA).

12

**C. Plaintiffs' negligence claim**

In count three of their complaint, plaintiffs asserted a claim for negligence against Wendover based upon its alleged failure to provide a satisfactory account of the amount owing under the agreement sufficient to allow plaintiffs to refinance the obligation in August 1991. The district court dismissed this claim, noting that Wendover was not the servicing agent at the time of the alleged refinancing attempt. Although Wendover briefly discusses this claim in its brief, there is no indication that plaintiffs are attempting to appeal the dismissal of this claim. If raised, we agree with the district court's ruling and the basis for its ruling on the negligence claim.

IV.

For the reasons set forth, we AFFIRM the district court's dismissal of plaintiffs' Truth-in-Lending Act and negligence claims, REVERSE the district court's ruling that RTC could not be joined, and REMAND plaintiffs' claim for declaratory relief to the district court for further proceedings.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

13