FILED
United States Court of Appeals
Tenth Circuit

April 27, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN J. PEMBROKE LIVING TRUST,

     Plaintiff - Appellant,

v.

U.S. BANK NATIONAL ASSOCIATION, as Trustee for WAMU Series 2006-AR11 Trust; SELECT PORTFOLIO SERVICING, INC.; JP MORGAN CHASE BANK, N.A.; HOLLAND & HART LLP; CYNTHIA RILEY,

     Defendants - Appellees.

No. 17-1244
(D.C. No. 1:16-CV-00020-CMA-MEH)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HARTZ**, and **McHUGH**, Circuit Judges.
_____

The John J. Pembroke Living Trust defaulted on a $1,905,000 residential mortgage loan for a home in Colorado after the loan changed hands several times. Facing foreclosure, Pembroke Trust sued two banks and a loan servicer in state court. It sought to enjoin foreclosure and to acquire the property by enforcing a

_____

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

right-of-first-refusal agreement it had made with the original lender. The state court rejected Pembroke Trust's arguments and found for the defendants on their counterclaims for breach of the promissory note and judicial foreclosure.

Undeterred, Pembroke Trust tried to cancel the loan shortly after the state court's ruling by sending the loan servicer a notice of rescission under the Truth in Lending Act (TILA), 15 U.S.C. § 1635. But the foreclosure process was well underway and the rescission notice did not elicit a response, so Pembroke Trust appealed the state-court judgment and filed this related action in federal court—this time adding the law firm that assisted with the foreclosure process (Holland & Hart LLP) and a former Washington Mutual Bank (WaMu) employee whose endorsement appears on the note (Cynthia Riley) as defendants.

The federal lawsuit seeks an injunction to stop further debt-collection activity. It also includes claims for violations of TILA, violations of the federal Fair Debt Collection Practices Act (FDCPA) and a similar Colorado statute, common-law fraud, and negligence. The district court dismissed the injunctive-relief claim under the *Younger* abstention doctrine, derived from *Younger v. Harris*, 401 U.S. 37 (1971). It also held that the rescission notice was untimely, thereby rejecting those claims under TILA and the FDCPA that were dependent on the validity of the rescission notice. The remaining claims not based on the rescission notice (the nonrescission claims) were stayed under the *Colorado River* abstention doctrine, derived from *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817-19 (1976); but after the state appellate court issued its opinion affirming the

2

judgment rendered in the foreclosure proceeding, the district court dismissed the stayed claims. We affirm.

## I.      Background

The facts and procedural history of this case are thoroughly recounted in the Colorado Court of Appeals opinion that affirmed the state trial court's dismissal order and foreclosure decree, the federal magistrate judge's report and recommendation, and the district court's order adopting that recommendation. We repeat them only as needed to frame the issues on appeal.

On May 19, 2006, John Pembroke refinanced a residential mortgage loan and signed a $1,905,000 promissory note in favor of WaMu. At the same time, he and his wife Linda executed a deed of trust, acting as trustees for their respective living trusts. The day before, Pembroke Trust had entered into a right-of-first-refusal agreement with WaMu, which gave Pembroke Trust the option to purchase the property in the event of a proposed transfer. (This side agreement's failure to survive successive transfers of the loan later became a focus of the state-court action.)

The Pembrokes made payments until they defaulted on the loan in 2011. Over the years, the loan changed hands, as did the company that serviced it. WaMu sold it to a loan pooling trust called the "WaMu Series 2006-AR11 Trust" (the Loan Trust) in 2006, but retained servicing rights. When WaMu failed in 2008, the Federal Deposit Insurance Corporation (FDIC) took over as receiver and sold the bulk of WaMu's assets—including the servicing rights to the note and the deed of trust—to appellee JPMorgan Chase Bank, N.A. (Chase). Chase, in turn, transferred the

3

servicing rights to appellee Select Portfolio Servicing, Inc. (SPS) and the note and deed of trust to appellee U.S. Bank National Association as trustee.

## II. Jurisdiction

The appellees contend as a threshold matter that we do not have subject-matter jurisdiction over the nonrescission claims because Pembroke Trust did not comply with the administrative-exhaustion requirements of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA). The district court did not reach this jurisdictional issue because it abstained from adjudicating these claims on other grounds. Nevertheless, we have "an independent obligation to determine whether subject-matter jurisdiction exists," *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (internal quotation marks omitted); accordingly, we requested supplemental briefing on this issue.

FIRREA bars courts from exercising jurisdiction over claims based on the acts or omissions of depository institutions that have been placed into receivership by the FDIC until the claimant has exhausted its administrative remedies. *See* 12 U.S.C. § 1821(d)(13)(D)(ii) (limiting judicial review of claims "relating to any act or omission" of a failed bank or of the FDIC as receiver); *see also Resolution Tr. Corp. v. Love*, 36 F.3d 972, 975-76 (10th Cir. 1994) ("[FIRREA] establishes administrative procedures for adjudicating claims asserted against [failed financial institutions]. . . . Pursuant to § 1821(d)(13)(D) of the act, a court does not have jurisdiction over a claim unless it has first been presented to the agency."). Pembroke Trust does not

4

allege, and the record does not reflect, any pursuit of administrative remedies, much less exhaustion of those remedies.

Whether FIRREA bars our jurisdiction turns on the timing of the appellees' purported misconduct. Administrative exhaustion is required if a claim arises before the depository institution enters receivership. *See Homeland Stores, Inc. v. Resolution Tr. Corp.*, 17 F.3d 1269, 1272-74 (10th Cir. 1994); *Resolution Tr. Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991) (per curiam) (mortgagor's right to continue pursuing counterclaims was "dependent upon its compliance with FIRREA's claims provisions," where counterclaim against mortgagee was pending when Resolution Trust Corporation was appointed as mortgagee's receiver). As the Seventh Circuit explained in another case involving Ms. Riley and WaMu, "Any of Riley's acts or omissions as an employee or agent of WAMU *taken before the FDIC receivership* would be attributable to WAMU for purposes of liability, and FIRREA bars a court from considering this claim against WAMU . . . in the absence of administrative exhaustion." *Mains v. Citibank, N.A.*, 852 F.3d 669, 679 (7th Cir.) (emphasis added), *cert. denied*, 138 S. Ct. 227 (2017).

The appellees characterize Pembroke Trust's claims as "rely[ing] on the *pre-receivership* conduct of Ms. Riley while she was an employee of WaMu," Riley's Suppl. Answer Br. at 8, or on pre-receivership "misconduct by WaMu," Aplees. Suppl. Br. at 13. To the extent that Pembroke Trust is asking us to resolve allegations of pre-receivership misconduct, the appellees are correct: we lack jurisdiction.

5

But it is clear from Pembroke Trust's complaint that the alleged misconduct stretches years beyond WaMu's failure and placement into receivership. The complaint contends that someone altered the blank copy of the note—which had not been endorsed back in 2006—to shore up title problems by fraudulently placing Ms. Riley's endorsement on it after she no longer had endorsement authority. This event supposedly occurred sometime between 2012 and 2014—a time frame that is indisputably *post*-receivership. The FIRREA exhaustion requirement does not apply to post-receivership misconduct. *See Homeland Stores*, 17 F.3d at 1272-76. Therefore, we have jurisdiction over these nonrescission claims.

## III. Analysis

### A. Nonrescission Claims

The state trial court made the following relevant findings in the "Judgment and Decree of Foreclosure":

- The Loan Trust, for which U.S. Bank became the trustee, acquired the promissory note in August 2006 "in good faith, for value, and without notice of the Pembrokes' or the Pembroke Trusts' claims and defenses." Aplt. App., Vol. 1 at 234.

- The promissory note "was not fabricated or falsified as suggested by the Pembroke Trusts." *Id.*

- "The Loan Trust is the holder in due course of the original Note indorsed in blank. . . . ." *Id.*

The Colorado Court of Appeals affirmed these determinations after Pembroke Trust filed this lawsuit. We review de novo whether this affirmance precludes Pembroke Trust's nonrescission claims. *See Campbell v. City of Spencer*, 777 F.3d 1073, 1077

6

(10th Cir. 2014) (a district court's grant of a motion to dismiss on preclusion grounds is reviewed de novo).

The essence of Pembroke Trust's nonrescission claims is that the promissory note is not valid or authentic and is thus unenforceable. The appellees argue that issue and claim preclusion bar Pembroke Trust from relitigating enforceability. We apply Colorado law to assess the state-court judgment's preclusive effect. *See Marrese v. Am. Acad. of Orthopaedic Surgeons,* 470 U.S. 373, 380 (1985) (the full-faith-and-credit statute, 28 U.S.C. § 1738, directs federal courts "to refer to the preclusion law of the State in which judgment was rendered").

Issue preclusion bars a party from relitigating a discrete issue in a current proceeding if (1) a prior proceeding resulted in a final judgment on the merits; (2) the issue is identical to an issue actually adjudicated in the prior proceeding; (3) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (4) the party against whom preclusion is asserted was a party or is in privity with a party in the prior proceeding. *See Foster v. Plock*, 394 P.3d 1119, 1123 (Colo. 2017).

These four conditions were satisfied here. Pembroke Trust properly does not challenge the first and fourth factors. The state-court judgment on the merits is now final because the Colorado Court of Appeals upheld the trial court's decision and Pembroke Trust did not file a petition for writ of certiorari. And Pembroke Trust was the plaintiff in both proceedings.

As for the second condition, Pembroke Trust's defense to the state-court foreclosure action and its nonrescission claims in federal court turn on the resolution of an identical issue: Is the promissory note enforceable? The state court actually adjudicated this question when it found that U.S. Bank holds the promissory note in due course as the trustee for the Loan Trust. Under Colorado law a holder in due course takes a note "free from all claims to [the note] and most defenses of any party to [it]." *La Junta State Bank v. Travis*, 727 P.2d 48, 51 (Colo. 1986).

Finally, Pembroke Trust had a full and fair opportunity to litigate this issue. It suggests that all it challenged before the state court was the authenticity of Mr. Pembroke's signature on the promissory note, and that it could not have challenged the legitimacy of Ms. Riley's endorsement there because it was not yet aware of the problem. But the state-court record shows otherwise. Not only did Pembroke Trust seek discovery relating to Ms. Riley's endorsement, *see* Aplt. App., Vol. 1 at 241 (interrogatory no. 6 requesting Chase to "[e]xplain all the facts and circumstances of how the endorsement signed by Cynthia Riley was placed on the NOTE, including the date upon which the endorsement was placed upon the NOTE"), but it also stated in opposing summary judgment that "there is a question of fact whether [the Loan Trust] took the Note with notice of an unauthorized signature or has been altered [sic]," *id.,* Vol. 3 at 699. Then at trial Pembroke Trust challenged the authenticity and timing of Ms. Riley's endorsement, as well as her authority, when it argued that the note was endorsed after the 2012 foreclosure. Having had a full and fair opportunity to litigate this issue, Pembroke Trust cannot overcome the

8

preclusion bar by citing additional evidence that should have been presented before entry of judgment in the prior case. *See Jones v. United States*, 466 F.2d 131, 136 (10th Cir. 1972) (where a party did not effectively present its case at the first trial, "affording [that party] a second opportunity in which to litigate the matter, with the benefit of hindsight, would contravene the very principles upon which collateral estoppel is based and should not be allowed").

The nonrescission claims are barred by issue preclusion. We therefore need not address claim preclusion.

### B. Rescission Claims

The rescission claims fare no better. We review de novo the district court's dismissal of these claims under Rule 12(b)(6) on the ground that the notice of rescission was untimely. *See Braxton v. Zavaras*, 614 F.3d 1156, 1159 (10th Cir. 2010) ("We review de novo the dismissal of an action under Rule 12(b)(6) based on the statute of limitations."). A consumer's unconditional right to rescind under TILA expires three business days after consummation of the loan or after delivery of the required disclosures and rescission forms, whichever is later. *See* 15 U.S.C. § 1635(a). A consumer also has a conditional right to rescind: "[W]hen a creditor fails to deliver the material disclosures and information and rescission forms required by TILA, a borrower retains the right to rescind until the creditor delivers those required documents." *Pohl v. U.S. Bank*, 859 F.3d 1226, 1228 (10th Cir. 2017). But "even if the creditor never delivers the required documents, the conditional right

9

to rescind lasts no longer than three years after the consummation of the transaction." *Id.* (citing § 1635(f)).

Pembroke Trust does not argue that the appellees failed to provide the required disclosures and rescission forms. Accordingly, the loan's consummation begins the three-year period to rescind. Pembroke Trust tries to characterize the consummation date as a factual issue. But TILA's implementing regulation, Regulation Z, defines "[c]onsummation" to mean "the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13). When a consumer becomes contractually obligated is determined by state law. *See id.* § 226.2(b)(3). Under Colorado law an enforceable contract is formed when there is "mutual assent to an exchange, between competent parties, with regard to a certain subject matter, for legal consideration." *FDIC v. Fisher*, 292 P.3d 934, 937 n.2 (Colo. 2013) (internal quotation marks omitted). Here, the parties entered into an enforceable contract on the closing date for the mortgage loan; at that time, Mr. Pembroke executed the promissory note and the deed of trust in exchange for a $1,905,000 residential mortgage loan from WaMu.

The closing date—and thus the consummation date—was May 19, 2006. Yet Pembroke Trust waited until May 2015 to send a notice of rescission to the loan servicer, SPS. Pembroke Trust's rescission notice thus came many years too late. It contends there are no time limitations on the right to rescind because a "rescission notice is effective upon mailing by operation of law" under *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790 (2015). Aplt. Reply Br. at 4. But this contention

10

misreads *Jesinoski*. The Supreme Court's focus was on "*how* the right to rescind is to be exercised," and it concluded that § 1635 requires only a notice of rescission, not a suit for rescission. *See Jesinoski*, 135 S. Ct. at 792 (emphasis added). Regarding the *time* for rescission, the Court made clear that the right to rescind "does not last forever" and "'shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever comes first.'" *Id.* (quoting § 1635(f)). It did *not* allow for perpetual rescission. The district court was correct in dismissing the TILA claims as untimely.

Our conclusion that the rescission notice was untimely also disposes of Pembroke Trust's remaining argument that the district court improperly dismissed its request for injunctive relief under the *Younger* doctrine. Pembroke Trust asked the district court to "invoke its equitable powers and enjoin [the defendants'] ongoing debt collection activity." Aplt. App., Vol. 1 at 32 (third claim for relief in First Amended Complaint). Later, it characterized this claim as "a request to effectuate its rights under [TILA] for a rescission issued under the act" through a notice sent on May 21, 2015. *Id.*, Vol. 3 at 762 (objections to Magistrate Judge's Report and Recommendation). The request for injunctive relief clearly depends on a viable TILA claim, which does not exist.

11

## IV.    Conclusion

We affirm the district court's dismissal of Pembroke Trust's claims.

Entered for the Court


Harris L Hartz
Circuit Judge